**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARGARET STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-435 RLW |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Margaret Starks's Second Motion to Compel Discovery and for Sanctions against Defendants St. Louis County ("the County") and William Trachsel (collectively "the County Defendants"). (ECF No. 103). Plaintiff moves the Court to sanction the County for failing to comply with the Court's discovery order dated December 7, 2021. Also before the Court is the County Defendants' motion for relief from the Court's June 21, 2022 Memorandum and Order compelling discovery. (ECF No. 143).

***I. Background***

In a Memorandum and Order dated June 21, 2022, the Court granted Plaintiff's Second Motion to Compel Discovery against the County Defendants and held in abeyance its ruling on Plaintiff's motion for sanctions against Defendant St. Louis County. (ECF No. 138). The Court ordered the County to respond to Plaintiff's Second Set of Interrogatories, Second Requests for Production, and Third Requests for Production, and ordered Defendant William Trachsel to respond to Plaintiff's First Set of Interrogatories, all without objections, on or before June 27, 2022. The Court further ordered the County to amend its answers to Plaintiff's First Set of Interrogatories, which was the subject of an order compelling discovery dated December 7, 2021.

The Court ordered the County to respond to Interrogatories Nos. 1, 6, 7, 8, 9, 11, and 13 fully and completely, without objections. (Id.) The County was warned that if it failed to amend its answers to Plaintiff's First Set of Interrogatories, the Court would strike the County's pleadings and enter default judgment against it. The County was also warned that the Court would impose sanctions against it if the County failed to respond to Plaintiff's Second Set of Interrogatories, Second Requests for Production, and Third Requests for Production.

On June 29, 2022, the County Defendants filed a Notice of Substantial Compliance and Motion for Relief from the Court's June 21, 2022 Memorandum and Order. (ECF No. 143). The County Defendants assert they have been working diligently to respond to Plaintiff's discovery requests and comply with the Court's Order and state that using their best efforts they were able to "substantially, but incompletely, comply with the Court's Order by June 27, 2022." (ECF No. 143 at 6). The County Defendants state that between June 21 and June 29, 2022, they reviewed and produced detailed answers to interrogatories and provided Plaintiff with over 10,000 documents in response to her requests to produce. The County Defendants contend that they served the vast majority of their discovery responses on or before June 27, 2022, but admit they supplemented their production on June 28-29, 2022.[1] The County Defendants state that they were unable to respond to all of Plaintiff's discovery requests by the June 27, 2022 deadline due to the amount of information requested and the volume of responsive documents. The County Defendants further concede there is outstanding discovery they have been unable to provide due time and labor constraints, including production of over 10,000 medical records. The County

[1]In a subsequent filing, the County Defendants state that they further supplemented their production of documents on July 1 and 15, 2022, which included providing information about a death at the Westfall Justice Center that occurred after the Court's June 21, 2022 Memorandum and Order.

Defendants move for relief from a portion of the Court's Order compelling discovery, pursuant to Federal Rules of Civil Procedure 6(b)(1)(B).

Plaintiff did not file a response to the County Defendants' motion but on June 30, 2022, she filed, as previously ordered, a Notice regarding the County Defendants' compliance with the Court's June 21, 2022 Memorandum and Order. (ECF No. 145). Contrary to the County Defendants' assertions, Plaintiff asserts that the County has not amended, supplemented, or provided any responses to Plaintiff's interrogatories, including amendments to the First Interrogatories as ordered by this Court. On July 18, 2022, Plaintiff filed an Amended Notice regarding the County Defendants' compliance with the Court's June 21, 2022 Memorandum and Order. (ECF No. 153). In her Amended Notice, Plaintiff explains that the County did provide answers to her interrogatories, including supplemental answers to the First Interrogatories, but the discovery responses were served by email to only one of Plaintiff's attorneys, who was isolating with COVID 19 at the time, and as a result there was a communication failure. Plaintiff further concedes the County Defendants responded to each set of her discovery requests but contends the County did not fully and timely comply with the Court's June 21, 2022 Memorandum and Order and, therefore, default judgment should be entered against the County.

## ***II. Discussion***

Plaintiff continues to urge the Court to enter default judgment against the County for its discovery violations. Setting aside for a moment the discovery requests to which the County failed to respond and for which it has moved for relief from the Court, Plaintiff points to a number of deficiencies in the County's responses that she contends demonstrate the County failed to fully and timely comply with the Court's June 21, 2022 Memorandum and Order. She also points to the fact that the County responded to the discovery on June 27, 2022, but continued to supplement

for three days after the deadline set by the Court. The Court will address these alleged deficiencies and the County Defendants' motion for relief before deciding Plaintiff's motion for sanctions.

**A. The County's Compliance with the Court's June 21, 2022 Memorandum and Order**

1. The County's Supplemental Answers to Plaintiff's First Set of Interrogatories

In her Notice and Amended Notice, Plaintiff argues the County's Supplemental Answers to Plaintiff's First Set of Interrogatories fail to comply with the Court's June 21, 2022 Memorandum and Order. Specifically, with regard to the County's supplemental answers to Interrogatories Nos. 9, 12, and 13, Plaintiff argues it appears the County did not conduct a reasonable inquiry as required by Fed. R. Civ. P. 26(g) and "merely regurgitated what the record said without apparently attempting to contact anyone as part of a reasonable and diligent investigation." (ECF No. 153 at 6). In other words, Plaintiff accuses the County of merely relying on documents in preparing its supplemental interrogatory answers.

According to the County's Supplemental Answers to Plaintiff's First Set of Interrogatories, Jeffrey Siler, Department of Justice Services, and Cathy Duffie, Communicable Disease Control Services of the St. Louis County Department of Public Health, provided supplemental answers to the interrogatories. Mr. Siler and Ms. Duffie signed the supplemental answers and attested that they are true and correct to the best of their information, knowledge, and belief. (ECF No. 153, Ex. 1 at 7-8). Unlike in the County's initial responses, it named names in its supplemental answers. In response to Interrogatory No. 9, the County identified twenty-one guards, eleven of whom had some sort of interaction with Mr. Starks. The County also supplied dates, times, and descriptions of the interactions between these guards and Mr. Starks. The County provided information regarding who examined Plaintiff and started his treatment with Clonidine, who made decisions

regarding his housing assignment, and who found Plaintiff lying on the floor of his cell. The Court has reviewed the supplemental answers and finds the County provided written, detailed answers to Interrogatories Nos. 1, 6, 7, 8, 9, 11, and 13 as ordered.

In arguing that the County failed to comply with the Court's June 21, 2022 Memorandum and Order, Plaintiff contends it is apparent the County merely repeated what was in documents without "without any effort to, fully, or properly respond to the question." (ECF No. 153 at 4). Plaintiff provides no evidence to support her contention aside from the County's answers themselves.

It is clear from the record that the County referred to documents when preparing its Supplemental Answers. Considering that the events in this case took place almost seven years ago, and in light of the number of detainees who have been housed at the Westfall Justice Center, it is not surprising the County would rely heavily on documents in answering the interrogatories. But it is not apparent from the County's answers that documents were the only source of information, or that the County failed to conduct a reasonable inquiry. Mr. Siler and Ms. Duffie attested that they provided information and the supplemental answers were true and correct to the best of their information, knowledge, and belief. Looking at the supplemental answers, there is no way of knowing who Mr. Siler, Ms. Duffie, and the County's attorneys interviewed or contacted to prepare the County's supplemental answers. Notably, Plaintiff did not ask the County in her First Set of Interrogatories to identify who was contacted, interviewed, or provided information in preparing its answers. While Plaintiff may wish to explore during depositions the sufficiently of the County's supplemental answers and whether a reasonable inquiry was undertaken, based on the record before it, the Court declines to find that the County failed to undertake a reasonable inquiry as required by Rule 26(g) in preparing its Supplemental Answers to Plaintiff's First Set of

Interrogatories. The Court finds the County sufficiently complied with the Court's June 21, 2022 Memorandum and Order with regard to its Supplemental Answers to Plaintiff's First Set of Interrogatories.

2. The County's Answers to Plaintiff's Second Set of Interrogatories[2]

Plaintiff also argues the County failed to comply with the Court's June 21, 2022 Memorandum and Order by failing to fully and timely answer her Second Set of Interrogatories. The County provided answers, without objections, to all eleven of Plaintiff's Second Set of Interrogatories, with the exception of Interrogatory No. 6 which is addressed below. Setting No. 6 aside for the moment, Plaintiff points to two interrogatories, Nos. 5 and 10, as evidence that the County failed to comply with the Court's June 21, 2022 Memorandum and Order and to support her argument that default judgment should be entered against it.

With regard to Interrogatory No. 5, Plaintiff requested information in a long, multi-part question about the County's policies and procedures related to the treatment of opioid addiction and withdrawal, prescribing Clonidine, and "the Clonidine protocol." (ECF No. 153, Ex. 2 at 13). Dr. Emily Doucette provided a three-paragraph response on behalf of the County that addressed much of what was asked in the interrogatory. Notably, however, Dr. Doucette did not describe the Clonidine protocol in her answer, as Plaintiff asked the County to do. In answering, Dr. Doucette

[2]In arguing for the entry of default judgment, Plaintiff also discusses the alleged deficiencies in the County's answers to her Third Set of Interrogatories. Plaintiff's Third Set of Interrogatories were not the subject of Plaintiff's Second Motion to Compel, however. In its June 21, 2022 Memorandum and Order, the Court did not compel the County to respond to Plaintiff's Third Set of Interrogatories. Therefore, whether the County fully and completely responded to this set of interrogatories is not relevant to the motions at bar. The Court encourages Plaintiff's counsel to meet and confer, in person or by telephone, with the County's counsel about this dispute and any other outstanding discovery dispute. E.D. Mo. L.R. 3.04(A). The Court has confidence in counsel's ability to resolve their future discovery disputes without the Court's involvement.

did reference a draft standing order and the most recent standing order concerning Clonidine, as well as a standing order for "comfort meds," which she stated were attached.[3] (Id.).

The County represents that it has produced thousands of documents to Plaintiff in response to her document requests. The Court will assume the County produced a document containing the Clonidine protocol, if such a document exists. If the document has been produced, the County shall amend its answer to Interrogatory No. 5 to reference and identify, by Bates numbering, the Clonidine protocol. If there is no document containing the Clonidine protocol, the County shall amend its answer to Interrogatory No. 5 to describe the Clonidine protocol, to the extent there is one. If there is no such protocol, the County shall so state in an amended answer to Interrogatory No. 5.

With regard to Interrogatory No. 10, Plaintiff asks the County to identify evidence that supports its contention that Mr. Starks's death was caused by the effects of his own drug abuse. In response, the County identified Mr. Starks's medical records while he was detained, his postmortem examination, the toxicology report, and the "IJMS journal." (ECF No 153, Ex. 2 at 16-17).[4] Plaintiff argues that the County's answer is insufficient because it merely identifies documents without describing them. The Court has not been provided with copies of the documents, but it would seem these documents are "evidence" and are responsive to Plaintiff's interrogatory. Unlike the County's initial answers to Plaintiff's First Set of Interrogatories, where the County referenced employment schedules and duty logs in response to questions about who

[3]There are no attachments to the copy of the County's Answers to Plaintiff's Second Set of Interrogatories that was filed with the Court. See ECF No. 153, Ex. 2.

[4]Again, the Court assumes the County produced these documents to Plaintiff. To the extent it did so, the County shall amend its answer to Interrogatory No. 10 to reference and identify the documents by Bates numbering. If these documents have not been produced, the County shall promptly disclose the documents and amend its answer to Interrogatory No. 10 to reference them by Bates numbering.

had interactions with Mr. Starks, the documents the County references here would provide an answer to Plaintiff's interrogatory. For example, a postmortem examination presumably would provide a cause of death. To the extent Plaintiff requires further clarification as to the County's contentions regarding Mr. Starks's cause of death, she can obtain such information during depositions. The Court finds the County sufficiently complied with the Court's June 21, 2022 Memorandum and Order with regard to its Answers to Plaintiff's Second Set of Interrogatories.

3. The County's Response to Plaintiff Second Request for Production of Documents

Plaintiff also argues that the County failed to comply with the Court's June 21, 2022 Memorandum and Order in that it did not fully and timely answer her Second Set of Document Requests. Specifically, in Document Request No. 8, Plaintiff requested "all emails sent or received in August 2015 to or from the following individuals: a) Faisal Khan, b) Julia Childrey, c) Delores Gunn, d) Fred Rottneck, e) Herb Bersen, and f) Darby Howard." (ECF No. 153, Ex. 4 at 3). In its response, which was served on June 27, 2021, the County wrote the following: "Pursuant to this Court's Protective Order (Court Doc. 123), see Bates Stamped Documents 001000-0010007. Additional documents have been requested." (Id.)

In Plaintiff's Amended Notice to the Court dated July 18, 2022, Plaintiff states that she received four emails in response to the request.[5] The County filed a "Response in Opposition to Plaintiff's Amended Notice to the Court" (ECF No. 156), in which the County explains that Plaintiff's Amended Notice only refers to emails it produced on or before June 27, 2022, but that

[5] The Bates numbering the County references in its response spans 9,007 pages, which is inconsistent with Plaintiff's assertion. But the reference is also inconsistent with the County's own explanation of its production of emails.

the County supplemented its responses, albeit after the Court's deadline, and provided Plaintiff with 3,292 pages of emails on June 28, 2022, and 14,897 pages of emails on June 29, 2022.[6]

There is a marked disconnect between the Plaintiff's Notice and Amended Notice and the County's Response, and the above is just one example. Another example is Plaintiff complains that in response to her Second Set of Document Requests, the County produced thousands of documents that did not contain the search terms she requested, in what Plaintiff characterizes as a document dump. Plaintiff attached a few of these documents to her Amended Notice to illustrate her point to the Court. The County responds that Plaintiff cherry-picked documents as examples and presented them out of context, as these documents were attached to emails that did contain the search terms Plaintiff requested. The County is adamant that it ran the search exactly as Plaintiff requested and provided all the responsive emails and attachments.

The record before the Court is not sufficient to permit it to review all documents the County produced to determine whether it has fully responded to Plaintiff's Second Set of Document Requests. The Court has reviewed all of the County's written responses, which were attached to the Plaintiff's Amended Notice. (ECF No. 153, Ex. 4). The County responded, without objections, to all twenty-five document requests by referencing thousands of pages of Bates-stamped documents and indicating when there were no responsive documents. While it is obvious the parties do not fully agree as to the extent of the County's compliance, there is evidence in the

[6]Plaintiff failed to mention in her Notice or Amended Notice the County's disclosure of thousands of pages of emails after the June 27, 2022 deadline. Instead, in her Amended Notice she describes a Sunshine Law request her attorney made to the County for emails from the same individuals during the same general timeframe, but for a shorter period of time. Plaintiff states that her attorney received a response to that request indicating emails were only available for three of the individuals, but that there were 711 emails. Plaintiff posits that this is evidence the County is "still" withholding emails, and she declares that "once again" the County has been caught "red-handed." (ECF No. 153 at 9).

record for the Court to find that the County made a good-faith effort to respond to Plaintiff's Second Set of Document Requests, and produced to Plaintiff a significant number of documents without objections. The Court cannot and will not go through each and every document request to determine whether the County has fully complied with the Plaintiff's requests. As stated above, the record is not sufficient to conduct such a review, but also it would not be a reasonable use of judicial resources. Instead, counsel shall meet and confer, in person or by telephone, and shall use all best efforts to resolve their differences as to any remaining discovery dispute related to Plaintiff's Second Set of Document Requests.

**B. The County's Defendants Motion for Relief from the June 21, 2022 Memorandum and Order**

The County Defendants concede that they were unable to respond to all of Plaintiff's discovery requests within the deadline set by the Court's June 21, 2022 Memorandum and Order, and attribute this failure to the volume of information that was requested to be produced. The County Defendants state that they supplemented their discovery responses after the June 27, 2022 deadline on June 28, 29, July 1, and 15, 2022. The County Defendants further state that despite their best efforts, they have been unable to provide all of the medical records and information related to those medical records that Plaintiff requested. The County Defendants move, pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), for relief from a portion of the Court's Order compelling discovery in two respects.

First, Request No. 14 of Plaintiff's Second Request for Production seeks "all the St. Louis County Department of Public Health medical records for any inmate and/or detainee who received Clonidine and/or was placed on a Clonidine protocol for the five (5) years prior to Mr. Starks's death." (ECF No. 153, Ex. 4 at 5). According to the County, on June 27, 2022 it produced information in the form of a spreadsheet containing the names of over 10,000 individuals who

were prescribed Clonidine or assigned to the Clonidine protocol. The County did not produce the medical records as requested, however. The County asserts it did not have the manpower to review, redact, and prepare for a HIPAA-compliant production such a voluminous number of medical records, some of which are maintained only in paper format, within the time allowed under the June 21, 2022 Memorandum and Order. The County represents that responding to this request would take several weeks due to staffing constraints and the volume of the records requested.

Second, Interrogatory No. 6 of Plaintiff's Second Set for Interrogatories seeks the following: "Between August 4, 2013 and August 4, 2016, identify any and all inmates and/or detainees who were diagnosed with opiate addiction and/or opiate withdrawal and also identify which inmates were prescribed Clonidine and/or placed on a 'Clonidine protocol,' and for each delineate which were a) sent to the infirmary directly from county jail 'intake', 2) sent directly to general population from 'intake', and 3) those sent to general population but whom **[sic]** ended up in the infirmary while still on Clonidine and/or the Clonidine protocol, and 4) those sent to the hospital or any outside facility." (ECF No. 153, Ex. 2 at 13).

According to the County, on June 27, 2022 it produced documents showing the individuals prescribed Clonidine or assigned to the Clonidine protocol in the five years prior to Mr. Starks's death, which occurred on August 6, 2015. Then on June 28, 2022, "realizing Interrogatory Number 6 sought information for a period beyond that requested in Request to Produce Number 14," the County supplemented its response by providing additional records showing who was prescribed Clonidine or assigned to the Clonidine protocol through August 4, 2016. (ECF No. 143 at 5). The County did not respond to the subparts of Interrogatory No. 14, however, and it asserts that to provide the information requested in the subparts, medical records of over 6,000 inmates must

reviewed.[7] The County states that members of the Corrections Medicine Practice team are the individuals most familiar with these records and capable of quickly reviewing them to locate the information Plaintiff seeks. But, according to the County, these individuals are responsible for providing care to all incarcerated persons in St. Louis County. Even with mandatory overtime, the County contends that the Corrections Medicine Practice team does not have the option to leave their patient responsibilities and review thousands of medical records. It asserts, "This would be a crippling task, and one which could lead to an unintended drop in the standard of care provided to jail inmates needing medical treatment." (ECF No. 143 at 5).

In their motion, the County Defendants request that the Court find good cause for their delay in fully complying with the June 21, 2022 Memorandum and Order. The County Defendants also request that the Court limit the scope of Request No. 14 and Interrogatory No. 6, and/or allow the County Defendants an additional fourteen days to provide the medical records sought in Request No. 14 and extend the time to provide the responses to Interrogatory No. 6 through the close of discovery, to avoid a negative impact on medical care provided to jail inmates. As stated above, Plaintiff did not respond to the County's motion.

The Court will grant the County Defendants relief. It cannot be disputed that the conduct of the County's previous counsel in this case was nothing short of reprehensible up until the time of the June 21, 2022 Memorandum and Order. But based on the record before the Court, it appears the County Defendants are now employing their best efforts to comply with Plaintiff's discovery requests and the Court's Order. The County Counselor's Office reassigned the case to new

---

[7]In a subsequent filing, the County asserts that over 12,687 unique patient records need to be reviewed, and that counsel has determined one staff member can process approximately twenty-eight records per hour, resulting in an estimated 453 man-hours needed to fully comply with Interrogatory No. 14. (ECF No. 146 at 4, n.1)

attorneys, who state they have been working diligently and for long hours to respond to Plaintiff's discovery requests. The Court recognized when it issued the June 21, 2022 Memorandum and Order that the County Defendants would be required to provide a large amount of discovery in a very short period of time, but did not appreciate at that time the breadth of some of Plaintiff's discovery requests or the enormity of the number of responsive documents. According to the County Defendants, some of these documents were readily available but some were not, such as personnel files and medical records. The County Defendants answered interrogatories and responded to document requests without objections, as ordered, and produced thousands of documents and continue to supplement their discovery responses. Based on the record before it, the Court finds the County Defendants' response to the June 21, 2022 Memorandum and Order matched the seriousness and urgency of that Order. Therefore, the Court will grant the County Defendants relief from the June 21, 2022 Memorandum and Order for discovery responses they made after the June 27, 2022 deadline.

As for the discovery responses they have yet to make, the County Defendants urge the Court to limit the scope of Document Request No. 14 and Interrogatory No. 6, but offer no guidance as to how the discovery requests should be limited. Plaintiff did not respond to the motion to offer a position as to whether or how her requests could be limited. While it would seem that providing medical records for over 10,000 inmates is disproportionate to the needs of this case, see Rule 26(b)(1), Fed. R. Civ. P., the Court will not limit the scope of the requests without guidance from the parties. The Court will grant the County additional time respond to Request No. 14 and Interrogatory No. 6. The County Defendants shall have an additional fourteen days to provide the medical records sought in Document Request No. 14, and will have through September 30, 2022 to provide the responses to Interrogatory No. 6. The Court encourages counsel to meet

and confer, in person or by telephone, to discuss limiting the scope of Request No. 14 of Plaintiff's Second Request for Production and Interrogatory No. 6 of Plaintiff Second Set for Interrogatories.

**C. Plaintiff's Motion for Sanctions**

Plaintiff's motion for sanction remains pending before the Court, and she continues to urge the Court to enter default judgment against the County. Plaintiff argues that the County failed to comply with the Court's June 21, 2022 Memorandum and Order and continues to flout its discovery obligations and, therefore, the entry of default judgment is the appropriate remedy. The Court does not agree.

The Court's discretion to impose sanctions for an abuse of discovery "is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and 'relate to the claim at issue in the order to provide discovery.'" Hairston v. Alert Safety Light Prod., Inc., 307 F.3d 717, 719 (8th Cir. 2002) (quoting Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 558 (8th Cir. 1992)). While the entry of default judgment is authorized under Rule 37, it is a drastic remedy that should be used only in extreme situations. Int'l Bhd. of Elec. Workers v. Hope Elec. Corp., 380 F.3d 1084, 1105 (8th Cir. 2004). The sanction of a default judgment is a harsh means of relief that should be reserved for those instances where the discovery abuses are committed in bad faith, or are deliberate, intentional, or willful. See Boogaerts v. Bank of Bradley, 961 F.2d 765, 768 (8th Cir. 1992). See also Savola v. Webster, 644 F.2d 743 (8th Cir. 1981) (where sanction of dismissal or default is levied, the district court's discretion is narrower, and the offending party's noncompliance must be willful or done in bad faith).

In the Court's view, the June 21, 2022 Memorandum and Order had its intended effect. While the County's conduct prior to the Court's June 21, 2022 Memorandum and Order may indeed have been deliberate, intentional, or willful, it appears to have righted the ship. New

attorneys have taken control of the case and responded the June 21, 2022 Memorandum and Order with diligence and urgency. The County appears to have made dedicated efforts to respond to Plaintiff's discovery requests within the time allowed under the Order. While the County was unable to meet all its discovery obligations before the June 27, 2022 deadline, the County has explained to the Court's satisfaction the reasons why it failed to provide all the information requested within the time allowed. The County has committed to providing the requested information and documents on an extended schedule, and there is evidence the County is standing by its commitment, as it has already made supplements. Therefore, the Court finds that the harshest remedy under Rule 37(b)(2), the entry of default judgment, is not warranted and it declines to enter default judgment against the County. The Court will grant Plaintiff's Motion for Sanctions to the extent she will be granted her attorneys' fees and expenses under Rule 37(b)(2)(C) as previously ordered, but in all other respects the motion is denied.[8]

**D. Other Outstanding Issues**

A number of the deadlines in the Case Management Order entered in this case have passed during the pendency of the discovery dispute, including the deadline to amend the pleadings and Plaintiff's expert disclosure deadline. The Court will enter a separate Amended Case Management Order and amend the deadlines.

Finally, the Court encourages the attorneys in this matter to view this juncture of the case as an opportunity for a fresh start. The Court commends the County Defendants for their efforts following the June 21, 2022 Memorandum and Order, but cautions them that this level of effort and attentiveness must be maintained through the remainder of this litigation. Further, the Court

[8]On July 15, 2022, Plaintiff filed a motion for her attorneys' fees as ordered, which the Court will take up at a later date. (ECF No. 157).

is well aware of the animosity between Plaintiff's attorneys and the County Counselor's Office, which stems not only from this case but from prior and other ongoing litigation. The animosity has spilled into the filings made in this case. In future filings, counsel shall refrain from insults, jabs, finger-pointing, and backbiting. Moreover, counsel should not reference attorney conduct in other cases or coverage in the media, unless it directly relates to the merits of this case or the issues at bar. The Court expects the attorneys to conduct themselves going forward with decorum and gracious professionalism.

Accordingly,

**IT IS HEREBY ORDERED** that consistent with the terms of this Memorandum and Order and the Memorandum and Order dated June 21, 2022, Plaintiff Margaret Starks's motion for sanctions against Defendant St. Louis County is **GRANTED in part** and **DENIED in part.** The motion is **GRANTED** to the extent that Plaintiff is awarded the attorneys' fees she incurred preparing her motions to compel and motion for sanctions and communicating with defense counsel regarding the defendants' failure to respond to her discovery requests. In all other respects, the motion is **DENIED.** [ECF No. 103].

**IT IS FURTHER ORDERED** that Defendants St. Louis County and William Trachsel's Motion for Relief from the Court's June 21, 2022 Memorandum and Order is **GRANTED** to the extent that Defendants shall have (1) an additional fourteen (14) days from the date of this Memorandum and Order to provide the medical records sought in Request to Produce No. 14 of Plaintiff's Second Request for Production, and (2) up to and including September 30, 2022, to respond to Interrogatory No. 6 of Plaintiff Second Set for Interrogatories. [ECF No. 143].

**IT IS FURTHER ORDERED** that consistent the terms of this Memorandum and Order, Defendant St. Louis County shall amend its answers to Interrogatories Nos. 5 and 10 of Plaintiff's Second Set of Interrogatories.

**IT IS FURTHER ORDERED** that counsel for the parties shall meet and confer, in person or by telephone, and they shall use all best efforts to resolve their differences as to any remaining discovery disputes related to Plaintiff's Second Set of Document Requests and any remaining discovery disputes.

The Court shall issue a separate Amended Case Management Order.

Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 2nd day of August 2022.