## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MARGARET STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-435 RLW |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is once again before the Court on a number of discovery motions.  Plaintiff Margaret Starks ("Plaintiff") filed a Motion for Default Judgment, Stay of the Discovery Deadline, for Sanctions, and Appointment of a Special Master ("Motion for Sanctions") against Defendant St. Louis County (the "County") and a Motion for Modification of the Case Management Order ("CMO"), Leave to Exceed the Presumptive Limit of Ten Depositions and Twenty-Five Interrogatories, and for Appointment of a Special Master ("Motion to Modify the CMO"). (ECF No. 195 & 229).  Also before the Court is the County's Motion for Protective Order against Plaintiff.  (ECF No. 197).  Finally, Plaintiff moves, with consent, for an extension of time to depose Defendants Heitman, Susman, Pierce, Khan, and Gunn's expert witness.  (ECF No. 206).  All the motions are fully briefed and ripe for review.

### I. Background

This cause of action arises from the death of Drexel Starks, who died while detained at the St. Louis County Justice Center.  Plaintiff Margaret Starks, Mr. Starks's mother, alleges that the defendants failed to provide her son with adequate medical care for approximately 29 hours, despite the fact he was obviously in medical distress.  In her Third Amended Complaint, Plaintiff

brings claims against the County, in addition to Defendants Faisal Khan, Delores Gunn, Fred Rottnek, Melissa Susman, William Trachsel, Cedric Ivy, Connie Heitman, and Teresa Pierce ("the Individual Defendants").

From the beginning, discovery in this case has been contentious and difficult.  In the summer of 2021, the Court granted Plaintiff leave to conduct discovery to ascertain the identity of the "Unknown Defendants" named in her complaint.  Plaintiff served her First Set of Interrogatories and First Requests for Production of Documents directed to the County on August 5, 2021.  After being granted extensions of time, the County failed to respond to the discovery requests within the time allowed.  On November 16, 2021, Plaintiff filed a motion to compel discovery responses against the County.  (ECF No. 91).  The County failed to file a response to Plaintiff's motion to compel.  In a Memorandum and Order dated December 7, 2021, the Court granted Plaintiff's motion to compel, and the County was ordered to fully respond to Plaintiff's August 5, 2021 discovery requests, without objections.  (ECF No. 95).

In the meantime, on December 2, 2021, Plaintiff served the County with her Second Set of Interrogatories and Second Requests for Production of Documents.  And on December 20, 2021, she served the County with her Third Requests for Production of Documents.  The County neither responded to these written discovery requests under the time allowed nor sought extensions of time from the Court.  Plaintiff, therefore, filed a second motion to compel and for sanctions against the County, to which the County also did not file a response.  In addition to moving that the County be compelled to respond to her Second Set of Interrogatories and Second and Third Requests for Production of Documents, Plaintiff moved that the Court sanction the County for failing to comply with the Court's discovery order dated December 7, 2021.  Plaintiff argued that the County failed to respond to her First Set of Interrogatories in full as ordered.

In a Memorandum and Order dated June 21, 2022, the Court granted Plaintiff's second motion to compel.  (ECF No. 138).  The County was ordered to respond to Plaintiff's Second Set of Interrogatories and Second and Third Requests for Production of Documents by June 27, 2022. In addition, the Court ordered the County to amend some of its answers to Plaintiff's First Set of Interrogatories.  The Court held in abeyance ruling on Plaintiff's motion for sanctions, but the County was warned that if it failed to amend its answers to Plaintiff's First Set of Interrogatories, the Court would strike the County's pleadings and enter default judgment against it.  The County was also warned that the Court would impose sanctions against the County if it failed to respond to Plaintiff's Second Set of Interrogatories, and Second and Third Requests for Production of Documents.

On June 29, 2022, the County filed a Notice of Substantial Compliance and Motion for Relief from the Court's June 21, 2022 Memorandum and Order.  (ECF No. 143).  The County asserted that it had worked diligently to respond to Plaintiff's discovery requests and comply with the Court's Order, but despite its best efforts it was unable to fully comply with the Court's Order by June 27, 2022, although it had substantially complied.  (ECF No. 143 at 6).  The County stated that it was unable to fully respond to all of Plaintiff's discovery requests by the deadline due to the vast amount of information Plaintiff was requesting and the volume of responsive documents.  In requesting more time, the County pointed to specific examples of burdensome discovery requests.

In a Memorandum and Order dated August 2, 2022, the Court noted that while it "recognized when it issued the June 21, 2022 Memorandum and Order that the County [ ] would be required to provide a large amount of discovery in a very short period of time, [the Court] did not appreciate at that time the breadth of some of Plaintiff's discovery requests or the enormity of the number of responsive documents."  (ECF No. 158).  In particular, the Court was unaware of

3

the fact that responding to Request No. 14 of Plaintiff Second Requests for Production of
Documents and Interrogatory No. 6 of Plaintiff's Second Set of Interrogatories would require the
County to produce medical records for over 10,000 detainees.  In granting the County some relief
from the June 21, 2022 Memorandum and Order, the Court wrote:

> [B]ased on the record before the Court, it appears the County [is] now employing
> [its] best efforts to comply with Plaintiff's discovery requests and the Court's
> Order. The County Counselor's Office reassigned the case to new attorneys, who
> state they have been working diligently and for long hours to respond to Plaintiff's
> discovery requests. The Court recognized when it issued the June 21, 2022
> Memorandum and Order that the County [ ] would be required to provide a large
> amount of discovery in a very short period of time but did not appreciate at that
> time the breadth of some of Plaintiff's discovery requests or the enormity of the
> number of responsive documents. According to the County [ ], some of these
> documents were readily available but some were not, such as personnel files and
> medical records. The County [ ] answered interrogatories and responded to
> document requests without objections, as ordered, and produced thousands of
> documents and continue to supplement their discovery responses.  Based on the
> record before it, the Court finds the County['s] response to the June 21, 2022
> Memorandum and Order matched the seriousness and urgency of that Order.

(ECF No. 158).  The Court granted the County additional time to respond to some of the discovery
requests.  Furthermore, the Court wrote "it would seem that providing medical records for over
10,000 inmates is disproportionate to the needs of this case, see Rule 26(b)(1), Fed. R. Civ. P.,"
however, the Court declined to limit Document Request No. 14 and Interrogatory No. 6, because
the parties had not offered guidance as to how these discovery requests should be limited.  (Id.).
The Court did encourage counsel to meet and confer to discuss limiting the scope of Request No.
14 and Interrogatory No. 6.  In fact, the Court ordered "that counsel for the parties shall meet and
confer, in person or by telephone, and they shall use all best efforts to resolve their differences as
to any remaining discovery disputes related to Plaintiff's Second Set of Document Requests and
any remaining discovery disputes."  (Id.).

As for sanctions, in its Memorandum and Order dated August 2, 2022, the Court granted the Plaintiff's Motion for Sanctions to the extent she was granted her attorneys' fees and expenses under Rule 37(b)(2)(C), but in all other respects the motion was denied.  In denying Plaintiff's request for additional sanctions, such as the entry of default, the Court noted the following:

> The County appears to have made dedicated efforts to respond to Plaintiff's discovery requests within the time allowed under the Order.  While the County was unable to meet all its discovery obligations before the June 27, 2022 deadline, the County has explained to the Court's satisfaction the reasons why it failed to provide all the information requested within the time allowed. The County has committed to providing the requested information and documents on an extended schedule, and there is evidence the County is standing by its commitment, as it has already made supplements.

(Id.)  The Court concluded by encouraging the attorneys "to view this juncture of the case as an opportunity for a fresh start."  (Id.)

Seven months later, Plaintiff is back requesting that the Court enter default judgment against the County and for other sanctions based on what she describes as the County's willful discovery abuses and noncompliance with the Court's discovery orders.  The County also comes before the Court seeking relief from what it characterizes as burdensome and excessive discovery requests made by Plaintiff.  The Court will first address Plaintiff's Motion for Sanctions and the County's Motion for Protective Order before turning to Plaintiff Motion to Modify the CMO.

## II.  Discussion

### A.  Plaintiff's Motion for Sanctions

In her Motion for Sanctions, Plaintiff argues that the County has willfully abused the discovery process and violated the Court's previous discovery orders in a number of respects to her prejudice.  Plaintiff asks the Court to enter default judgment against the County for its discovery violations.  She also urges the Court to appoint a special master at the County's expense,

extend Plaintiff's deadline for completing discovery, compel the County to pay the costs of additional discovery, and order the County to pay Plaintiff's reasonable costs and attorneys' fees.

       1.  <u>Legal Standard</u>

Rule 37(b)(2) of the Federal Rules of Civil Procedure allows the Court to impose sanctions upon parties who fail to comply <u>with discovery orders</u>.  Under Rule 37, the Court has a number of options for addressing discovery violations, including: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  Fed. R. Civ. P. 37(b)(2)(A).

In addition to a wide array of options, the Court has broad discretion to impose sanctions for a party's failure to comply with discovery requests.  <u>United States v. Big D Enterprises, Inc.</u>, 184 F.3d 924, 936 (8th Cir. 1999); <u>Collins v. Burg</u>, 169 F.3d 563, 565 (8th Cir. 1999).  But the Court's discretion "is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and 'relate to the claim at issue in the order to provide discovery.'"  <u>Hairston v. Alert Safety Light Prod., Inc.</u>, 307 F.3d 717, 719 (8th Cir. 2002) (quoting <u>Avionic Co. v. Gen. Dynamics Corp.</u>, 957 F.2d 555, 558 (8th Cir. 1992)).  With respect to the sanction of striking of pleadings and entry of a default judgment, such sanction is appropriate upon finding that there was: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party.

Keefer v. Provident Life & Acc. Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000).  With this standard in mind, the Court takes up each of Plaintiff's arguments in her Motion for Sanctions.

2.   Discussion of the Alleged Discovery Violations

a.   *Morbidity and Mortality Review for Drexel Starks.*

Plaintiff argues that the County willfully concealed the Morbidity and Mortality Review into the death of Mr. Starks by falsely claiming no such review was conducted and no report exists. In Request No. 10 of Plaintiff's First Requests for Production of Documents, Plaintiff asked the County to produce, "The Morbidity and Mortality Review into Mr. Starks'[s] death by St. Louis County Department of Justice Services and/or St. Louis County Department of Public Health." (ECF No. 204-7 at 6).  In its initial Responses to Plaintiff's First Requests for Production, the County lodged objections to Request No. 10 and did not respond.  (ECF No. 204-9 at 6-7).  In the County's Supplemental Responses, which were dated December 23, 2021, the County withdrew its objections, as it was ordered to do by the Court, and responded to Request No. 10 by stating, "None." (ECF No. 204-10 at 2).

In Plaintiff's Second Set of Interrogatories directed to the County, Plaintiff asked the following in Interrogatory No. 11:

Identify a) the names of all persons who participated in the creation of the Morbidity and Mortality Review of Drexel Starks, b) all documents, records, notes, audio, video and other media related to the creation or review of the Morbidity and Mortality Review of Drexel Starks, and c) policies and procedures of St. Louis County Department of Public Health related to the creation of a morbidity report. For each person identified, set forth the following:

(a)   the individual's full name;
(b)   the individual's job title and description;
(c)   the name(s) of the individual's supervisors;
(d)   any professional titles and/or licenses held by the individual in August 2015;

7

> (e)    the date(s) and time(s) which the individual observed, interacted with, and/or provided any medical care and/or services to Mr. Starks;
>
> (g)    whether the individual was employed by St. Louis County in August 2015, is currently employed or was never employed by St. Louis County and, if no longer employed or was never employed please provide the individual's last date of employment with St. Louis County, the employer of the person in August 2015, and last known address, personal email address and phone number.

(ECF No. 204-11 at 9-10).  The County responded to Interrogatory No. 11 on June 27, 2022, as follows: "No Morbidity and Mortality Review was performed for Mr. Starks."  (ECF No. 208-3 at 18).  Plaintiff argues that both of these responses are false, and that the County is being willfully deceitful and withholding information and documents responsive to these discovery requests.

In its response to Plaintiff's Motion for Sanctions, the County states that a search for the Morbidity and Mortality Review was organized by the custodian of records for St. Louis County Department of Public Health, Celeste Vossmeyer, who was assisted by various employees of the County.  It further states that a number of Morbidity and Mortality Reviews were produced to Plaintiff of other detainees in response to other discovery requests, but it has not produced one for Mr. Starks, because one has not been located.  "[The] County has conducted numerous searches for any Morbidity and Mortality Review for Mr. Starks, and one has not been located."  (ECF No. 208 at 5).

Plaintiff, however, contends that she has uncovered evidence that a Morbidity and Mortality Review does exist for Mr. Starks, and the County is concealing it.  According to Plaintiff, during discovery the County produced an email dated August 13, 2015, from Cathy Duffie, who at the time was the interim risk management CQI coordinator, to Dr. Mary Case in which Ms. Duffie requested a copy of Mr. Starks's autopsy report, because "[w]e are doing a review of the circumstances and care of Drexel Starks …."  (ECF Nos 204-24 at 2).  Ms. Duffie also sent a

follow-up email, on October 8, 2015, to check on the status of her request.  (Id.).  Plaintiff's counsel showed these emails to Ms. Duffie during her deposition.  Plaintiff argues the emails and Ms. Duffie's deposition testimony establish that a Morbidity and Mortality Review for Mr. Starks was conducted, and the County has failed to produce the document.

The Court has carefully revied the record and does not agree with Plaintiff's characterization of the evidence.  First, Ms. Duffie did not testify that a Morbidity and Mortality Review was completed for Mr. Starks.  In support of her argument that it is now clear that a Morbidity and Mortality Review was in fact done, Plaintiff cites to the following testimony from Ms. Duffie: "I know that I had paper charts on all of the people who passed away, and there were notes for all of those patients, all these people in a file."  (ECF No. 204-42 at 19).  In her court filings, Plaintiff presented Ms. Duffie's testimony to the Court out of context.  Here is a more complete exchange between Ms. Duffie and Plaintiff's counsel: [1]

> Q:      So after Mr. Starks died in 2015, Sherron Dale died, Mark Patton died, Markus Scruggs died, Courtney Buck and Cedric Dunn.  Surely you conducted [a Morbidity and Mortality Review] into these people's deaths, correct?
>
> A:      What I remember from before this time, and this is just what I remember, I don't remember a – a separate [Morbidity and Mortality Review] being done by the medical department without Justice Services there.  And – and it was mostly coordinated by them.
>       But we did supply the medical information, we did do our own review.  I don't know that it was in the form of an [Morbidity and Mortality Review].  I know that I had paper charts on all of the people who passed away, and there were notes for all of those patients, all these people in a file.

(ECF No. 204-42 at 19) (emphasis added).

---

[1]The Court does not have a full copy of Ms. Duffie's deposition transcript.  Plaintiff attached to her Memorandum in Support of her Motion for Sanctions selective excerpts from Ms. Duffie's deposition.  The excerpt here starts on page 129 of the deposition transcript.  Plaintiff's counsel did not provide the Court with pages 126-128.

In the Court's view, Plaintiff has conflated "review," meaning a document, with "review" meaning a process.  Ms. Duffie testified that she did participate and lead some investigations, and that at one time she had paper charts and notes on detainees who had died.  There is evidence from Ms. Duffie's testimony that the medical department may have commenced a Mortality and Morbidity Review or other investigation into Mr. Starks's death.  For example, Ms. Duffie requested an autopsy report to conduct a review.  But she did not testify that a Mortality and Morbidity Review, the process, was in fact completed, or that a Mortality and Morbidity Review, a document, was written.

Plaintiff's Document Request No. 10 asks for "The Morbidity and Mortality Review," and Interrogatory No. 11 sought information about "the creation" of "the Mortality and Morbidity Review" for Mr. Starks.  In the Court's view, these discovery requests assume a Morbidity and Mortality Review was completed and that a report was generated.  The evidence Plaintiff points to in her Motion for Sanctions and supporting memoranda do not establish that this was done.

The Court declines to find that the County's responses to these discovery requests were willfully deceitful.  The evidence before the Court does not establish that a Morbidity and Mortality Review report for Mr. Starks was completed, and the County has failed to produce the document or report.  Plaintiff's motion for sanctions based the County's alleged failure to produce a Morbidity and Mortality Review report for Mr. Starks is denied.[2]

---

[2]In her Motion for Sanctions, Plaintiff also points to the fact that the County failed to produce information and documents related to Mortality and Morbidity Reviews of the deaths of other detainees.  Plaintiff states that she sought this information in her Third Set of Interrogatories.  But Plaintiff did not move to compel the County to respond these interrogatories.  Plaintiff's Motion for Sanctions concerning the County's alleged failure to provide Mortality and Morbidity Reviews for the deaths of other detainees is denied on the basis that the Court's previous orders were not directed to Plaintiff's Third Set of Interrogatories.  See Fed. R. Civ. P. 37(b); Keefer, 238 F.3d at 940.

That said, Ms. Duffie did testify that she believed there may be documentation related to Mr. Stark's death and review of his death by the medical department in electronic format on a shared drive and in paper format in the nurse manager's office.  It is not clear from the record whether the County searched for or produced these records.  To the extent it has not, the County shall (1) search for these documents as part of its reasonable inquiry pursuant to Fed. R. Civ. P. 26(g); and (2) supplement its discovery responses and disclose any responsive documents or indicate none were found.

    *b. Nurse Pierce.*

In her Motion for Sanctions, Plaintiff also accuses the County of willfully deceiving Plaintiff and the Court by wrongfully identifying Teresa Pierce as the nurse solely responsible for Mr. Starks's Medical Care.  Interrogatory No. 11 of Plaintiff's First Set of Interrogatories, which was served on August 4, 2021, asked the following:

> Identify all nurses and/or medical providers that were scheduled, assigned to, and/or responsible for Mr. Starks, his medical [sic], monitoring his participation in the "Clonidine Protocol," and/or dispensing medication to him from 8:00 p.m., August 5, 2015 through 2:00 p.m., August 6, 2015.

(ECF No. 204-2 at 6).

On December 10, 2021, the County made a number of objections, and subject to its objections responded:

> Defendant can only direct Plaintiff to STLCO000001-168 at this time, which include the work schedules for the Department of Justice Services and Corrections Medicine, which include the infirmary, for August 6, 2015, IJMS Event Logs/Tours for August 6, 2015, the Electronic Medical Record for Plaintiff's decedent, Drexel Starks, and the internal affairs investigation regarding the death of Plaintiff's decedent. Documents will be produced once the necessity of a protective order is determined.

(ECF No. 204-3 at 17).  The County's objections were out of time.  The Court granted Plaintiff's motion to compel and ordered the County to respond to this interrogatory without objections.

(ECF No. 95).  On December 16, 2021, the County provided the same response without asserting objections to the interrogatory.  (ECF No. 204-4 at 4-5).  Later, Plaintiff moved to compel a more complete response.  In its Memorandum and Order dated June 21, 2022, the Court found the County's response to be insufficient in that the information sought by the interrogatory could not be ascertained through the documents cited.  The Court ordered the County to supplement its response.  (ECF No. 138).

On June 27, 2022, the County supplemented its response to Interrogatory No. 11 as follows:

According to Mr. Starks'[s] medical records, Connie Heitman, R.N. performed the initial medical examination of Mr. Starks on August 4, 2015 and based on the Correctional Medicine Standing Orders for Acute Withdrawal Syndrome, provided him with medications for his symptoms, including Clonidine. According to Mr. Starks'[s] medical records, on August 5, 2015, Mr. Starks was examined by Sarah Mueller, R.N. at 12:38 a.m. and Marquita Fletcher, M.A. at 8:42 a.m.; on August 6, 2015, Tonia Dellcour, responded to assist Mr. Starks at 2:00 p.m. Additionally, the following individuals were scheduled for medication passing on August 5, 2015 and August 6, 2015, based on the nursing schedules previously produced as Bates Numbers STLCO 000200-000203, T[]eresa Pierce was scheduled to pass medication on the 8th floor, unit 8a on August 5 and 6, 2015.

(ECF No. 204-5 at 7).

On February 6, 2023, Plaintiff's counsel took Teresa Pierce's deposition.  At her deposition, Ms. Pierce testified that she did not know whether she worked in 8A on "that day."  (ECF No. 204-27 at 5).

On February 7, 2023, the County amended its response to provide:

Upon further review of the nursing schedules, previously produced as Bates Numbers STLCO 000200-000203, Cathy Duffie amends her previously provided response on behalf of St. Louis County. When looking at the nursing schedules for August 5, 2015 and August 6, 2015, it appeared to Ms. Duffie that Teresa Pierce was scheduled for the day shift medication room and appeared to be assigned to the 8th floor on both days, since her name was the last of the individuals listed on the scheduling spreadsheet. Therefore, in June 2022, when Ms. Duffie was assisting with the interrogatory responses for events from 2015, Ms. Duffie mistakenly thought that Ms. Pierce passed medication to individuals in unit 8A. Ms. Duffie has since studied the schedule, as well as the medical record for M.C. for August 5,

2015, previously produced as Bates Number 105715 and for W.I. for August 6, 2015, previously produced as Bates Number 13034S. Based on M.C.'s medical record, nurse Reginald (Reggie) Tinoco was taking vital signs on 8A on August 5, 2015, during the evening shift of 3:00 p.m. to 11:00 p.m. Additionally, based on W.I.'s medical records, Michael King was in 8A on August 6, 2015, during the day shift.   The other individuals listed as working those shifts and assigned to the medication room may have also passed medications to inmates assigned to unit 8A, as well, however: The individuals assigned to the medication room on August 5, 2015 between 3:00 and 11:00 p.m. were Carlina Stucky-Parchmon, Mindy (Melinda) Ferguson, Sheryl Lambert, Kisha Williams, and Reggie (Reginald) Tinoco. The individuals assigned to the medication room on August 6, 2015 between 7:00 a.m. and 3:00 p.m. were Tonia Dalcour, Debra Tucker, Shatia Reece, Mike (Michael) King, and Teresa Pierce.

(ECF No. 204-6 at 7).

In her motion for sanctions, Plaintiff asserts that the County willfully "accused" Teresa Pierce as being the nurse solely responsible for Mr. Starks's medical care in its answer from June 2022, when she was not.  Plaintiff also states, "Incredibly, Ms. Duffie now admits, that when under this Court's order, she initially reviewed only a single document in answering First Interrogatory No. 11, namely the nursing work-schedule for August 5 and 6, 2015."  (ECF No. 204 at 9).

Again, Plaintiff has mischaracterized the discovery request, the County's responses, and the evidence.  First, Plaintiff's interrogatory did not ask for the nurse who was "solely responsible" for Mr. Starks's medical care.  It asks the County to identify nurses who were "<u>scheduled, assigned to</u>, <u>and/or</u> <u>responsible for</u> Mr. Starks, his medical, monitoring his participation in the 'Clonidine Protocol,' <u>and/or</u> dispensing medication to him" for an 18-hour time period from 8:00 p.m., August 5, 2015 through 2:00 p.m., August 6, 2015."  (ECF No. 204-3 at 17) (emphasis added).  In addition to naming nurses who examined Mr. Starks and responded to assist him, the County identified Teresa Pierce as the nurse who was scheduled to pass medication in Mr. Starks's housing unit on August 5 and 6, 2015.  Nowhere in its supplemental response from June 27, 2022, did the County state that Ms. Pierce was the nurse who was "solely responsible" for Mr. Starks's medical care.

Second, it is apparent from reading the County's supplemental response dated June 27, 2022, that Ms. Duffie did not review one document in responding; she reviewed Mr. Stark's medical records and the scheduling records. Ms. Duffie later explained in an affidavit and during her deposition that she made a mistake in identifying Teresa Pierce as the nurse responsible for passing medication on August 5, 2015 and August 6, 2015 in Mr. Starks's housing unit. "When Ms. Duffie realized her error, Defendant County served Plaintiff with Ms. Duffie's affidavit and an Amended Response to Plaintiff's First Request for Interrogatories," which happened in February 2023. (ECF No. 408 at 7).

The Court finds the County's conduct in misidentifying Ms. Pierce in its June 27, 2022 supplemental response was not willful or deliberate. At most, the Court finds County's conduct was careless. The Court will not sanction the County and enter default on this basis. But the Court will allow Plaintiff some relief, because while the County attempted to correct its error, the County's amended response to the interrogatory dated February 7, 2023 was inadequate.

With regard to the County's February 7, 2023 amended response, Plaintiff argues the County still has not "definitively identified the nurse who was responsible but instead simply listed the names of each of the other four (4) nurses working the evening shift that day." (ECF No. 234). The Court agrees with Plaintiff, in part. The County's amended response does not identify a single nurse who was responsible, but the interrogatory did not ask for the nurse who was "solely responsible" for Mr. Starks's medical care.

That said, the Court finds that the County's February 7, 2023 amendment is nonresponsive, at least in part. Plaintiff's Interrogatory No. 11 did not ask for the names of the nurses and medical providers assigned to unit 8A or the medication room. Plaintiff also did not ask who provided medical care to W.I. or M.C. Instead, Plaintiff asked the County to identify the nurses and medical

providers who were <u>scheduled, assigned to, and responsible for Mr. Starks</u> between 8:00 p.m.,

August 5, 2015 through 2:00 p.m., August 6, 2015.  The County has not clearly responded to the

interrogatory and identified who these nurses and/or providers were.

Plaintiff asserts that at Ms. Duffie's deposition on February 16, 2023, she stated that with

additional inquiry it would be possible to identify the nurses responsible for Mr. Starks's care

correctly and definitively, and she could do this probably within "a week or so."  (ECF No. 204 at

11).[3]  Plaintiff states the County has not supplemented its response to Interrogatory No. 11 since

February 7, 2023.

The Court will order the County to amend its response.  For the timeframe between 8:00

p.m., August 5, 2015 through 2:00 p.m., August 6, 2015, the County shall identify the following:

(1) nurses and medical providers who were scheduled or assigned to Mr. Starks; and (2) medical

providers who were responsible for providing Mr. Starks medical care, monitoring his

participation in the "Clonidine Protocol," and/or dispensing medication to him.  The Court also

will allow Plaintiff to take the depositions of the nurses and medical providers who the County

identifies in its amended response, to the extent the persons identified have not been deposed

---

[3]The Court cannot verify Plaintiff's assertion because Plaintiff did not provide her counsel's question and Mr. Duffie's response in context.  The following is from the top of page 315 of the transcript from Ms. Duffie's deposition, which was attached to Plaintiff's Memorandum in Support of her Motion for Sanctions:

> Q:    My question, again, is how long do you think it would take you
>       from today to go through that and determine if there is that kind of
>       information in there?
> A:    I don't know. A week or so.

(ECF No. 204-42 at 27).  Plaintiff did not provide the Court with a copy of page 314, the preceding page.

during discovery in this case.  These depositions shall be in addition to the ten depositions Plaintiff is allowed under the CMO.

### c.  *Medical records from other detainees.*

Plaintiff also moves for sanctions against the County based on her assertion that the County failed to provide medical records for other detainees.  In her motion for sanctions, Plaintiff explains that in Request No. 14 of her Second Requests for Production of Documents, she requested the medical records for any inmate and/or detainee who received Clonidine and/or was placed on a Clonidine protocol for the five (5) years prior to Mr. Starks'[s] death." (Doc. 204-12 at 7).  Plaintiff states that after being compelled by the Court to respond to this document request, the County did produce some of these records, but Plaintiff later discovered that the County had withheld records for 29 of 36 detainees who were also being treated under the jail's prescribed withdrawal protocol the same week Mr. Starks died.  Plaintiff informed the County of its omission, and the County later provided the documents.

In its Memorandum and Order dated August 2, 2022, the Court specifically addressed Interrogatory No. 14.  The Court encouraged, and in fact ordered, the parties to meet and confer to discuss limiting the scope of Plaintiff's request for medical records from other detainees due to the extremely large volume of records that were responsive to this discovery request.  (ECF No. 158).  It would appear this is what the parties did, although it would seem a misunderstanding arose as to how the request was being limited.  In the memoranda in support and in opposition to Plaintiff's Motion for Sanctions, the parties devote pages to detailing discussions between counsel and attempts to limit the large amount of medical records Plaintiff was requesting by the County's codes or otherwise.  The parties also attached to their memoranda in support and opposition to Plaintiff's Motion for Sanctions emails the parties contend support their respective positions.

The Court declines to wade through the details of these discussions and emails, because Plaintiff admits in her reply memorandum that the issue was ultimately resolved.  The "County [ ] admits that it failed to initially produce these twenty-nine records and only did so after Plaintiff recognized this omission."  (ECF No. 234 at 9).  The Court declines to sanction the County based on its alleged misconduct relating to Interrogatory No. 14.

> ### d.  Written complaint from employee.

In Interrogatory No. 7 of Plaintiff's Second Set of Interrogatories, Plaintiff asked the County to produce internal complaints regarding lack of proper medical treatment and the administration of the "Clonidine Protocol." Interrogatory No. 7 specially asked the following:

> Identify any and all current or former St. Louis County employees, whistleblowers, or other St. Louis County employee reporting or complaining parties, in the last ten years, who made any reports and/or complaints to St. Louis County and any of its officers, officials, employees, department directors and supervisory staff, human resources department regarding 1) the provision of health care to inmates at the Buzz Westfall Justice Center including the infirmary 2) the staffing and staffing levels of health care staff at the Buzz Westfall Justice Center and its infirmary, and/or 3) the use of Clonidine or the "Clonidine protocol", and, for each person identified, set forth the following:

(ECF No. 204-11 at 7).  In its response, the County denied that it had received any such complaints.

In her Motion for Sanctions, Plaintiff points to the fact that a current County employee and defendant, Connie Heitman, testified at her deposition that she submitted written complaints on a computer regarding her coworkers' failure to perform the required medical assessments of withdrawal detainees, and yet the County failed to produce these written complaints.  Ms. Heitman also testified that she was unsure when she sent these complaints, but that it was likely years ago.

The County responds that Ms. Heitman testified that she had complained to someone about coworkers not properly documenting their actions.  Her written complaint was not about coworkers administering medical care, which is what was asked in Interrogatory No. 7.  Therefore, according

to the County, the fact that it did not supplement its response to reflect Ms. Heitman's complaints about documentation is not an example of intentional wrongdoing or the willful withholding of documents.

First, it is difficult for the Court to discern exactly what Ms. Heitman testified at her deposition that she complained about because Plaintiff did not provide the Court with the relevant portions of her deposition transcript. In the copy of the transcript from Ms. Heitman's deposition that the Court was provided, there is testimony Ms. Heitman made complaints on a computer, and that she has complained "several times that the chartings are not done." (ECF No. 204-33 at 9-10). Were Ms. Heitman's complaints regarding "the provision of health care to inmates at the Buzz Westfall Justice Center including the infirmary 2) the staffing and staffing levels of health care staff at the Buzz Westfall Justice Center and its infirmary, and/or 3) the use of Clonidine or the 'Clonidine protocol'"? Based on the record before it, the Court cannot say. The Court, therefore, will not sanction the County based on its response to this Interrogatory. However, to the extent it has not, the Court will order the County to search for Ms. Heitman's written complaints and produce her complaints if they are found. If none of Ms. Heitman's written complaints are found, the County shall so indicate.

> e. *Failure to respond to Plaintiff's inquiries for investigatory records from the Medical Examiner's Office.*

Plaintiff also moves to for sanctions based on the County's untimely production of investigatory records from the Medical Examiner's Office. In her Motion for Sanctions, Plaintiff states that in her Fifth Request for Production Nos. 1 and 7, she sought notes, records, and documents from the St. Louis County Medical Examiner's officer "related to Mr. Starks'[s] death and/or autopsy," and the County did not provide these in a timely manner. (ECF No. 204 at 13). Plaintiff did not move to compel the County to respond to her Fifth Request for Production of

Documents. Because there is no court order, the Court will not entertain a motion for sanctions on this basis. See Fed. R. Civ. P. 37(b); Keefer, 238 F.3d at 940. It also appears from the County's response and the Plaintiff's reply memoranda that this issue has been resolved.

      *f.* *Information regarding the jail guards and other employees responsible for Mr.*
         *Starks's medical care and observation.*

In Interrogatory No. 4 of Plaintiff's Second Set of Interrogatories, Plaintiff asked for information regarding "who conducted or should have conducted but failed to conduct, security tours, key lock checks, sign-of-life checks, and any other task, job and/or duty in Mr. Starks'[s] pod at any time while Mr. Starks was in the custody of St. Louis County in August 2015." (ECF No. 204-11 at 5-6). In her Motion for Sanctions, Plaintiff argues the County refuses to answer who failed to conduct the required 30-minute security tours.

The County responds that it answered Plaintiffs Interrogatory No. 4 and all its subparts by providing a written response, which included identifying several persons by name. In addition, the County states it produced records showing who was working in Mr. Starks's housing unit, the tours of the housing unit that were conducted throughout Mr. Starks's time in the St. Louis County jail, and the watch commander reports for each shift during that time period. The County contests Plaintiff's assertion that jail guards and other employees failed to perform their duties, including conducting security tours.

The Court has reviewed the record and declines to decide whether correctional officers, jail guards, or other employees failed to conduct 30-minute security tours. The Court finds that the County's response is sufficient, and Plaintiff's Motion for Sanctions based on the County's answer to Interrogatory No. 4 is denied.

g. *Email addresses and telephone numbers.*

In Interrogatory No. 3 of Plaintiff's Second Set of Interrogatories Plaintiff asked the County, among other things, to "[i]dentify any and all . . . corrections officers and/or employees of Defendant St. Louis County who has knowledge of, observed, interacted with . . . Mr. Starks at any time during while he was in the custody of St. Louis County . . .." (ECF No. 204-11).  In subpart 3(g), with respect to former employees, Plaintiff requested that the County provide his or her last known home addresses, telephone numbers, and email addresses.  In her Motion for Sanctions, Plaintiff points to the fact that the County initially failed to provide the requested information.  The parties met and conferred, and the County ultimately did provide telephone numbers for the former employees, albeit after some delay.  The issue appears to have been resolved, and the Court declines to sanction the County based on its conduct with regard to its response this interrogatory.

3.   Summary of Court's Ruling on Plaintiff's Motion for Sanctions

In her Motion for Sanctions, Plaintiff moves for the most punishing Rule 37 discovery sanction – that the Court enter default judgment against the County.  Plaintiff, however, fails to meet her burden of showing that the County willfully violated a Court order concerning discovery. After review of the record, the Court finds that most of alleged discovery violations Plaintiff raises in her Motion for Sanctions concern communication problems, including miscommunications regarding inartfully drafted discovery requests and inferences that were made from deposition testimony.  Plaintiff's copious discovery requests were not focused on the elements of Plaintiff's claims and the County's defenses, and County's conduct in responding to these requests was, at most, sloppy or careless.   The Court further finds that issues Plaintiff raises in her Motion for Sanctions reflect more the ongoing acrimonious relationship between Plaintiff's counsel and the

County than sincere attempts to resolve disputes that have arisen during discovery.  In sum, the Court finds the County did not willfully violate the Court's discovery orders, and Plaintiff's Motion for Sanctions is denied.

### B.      The County's Motion for Protective Order

In its motion, the County moves for a protective order as to Plaintiff's Eighth, Ninth, and Tenth Requests for Production of Documents and her Seventh Set of Interrogatories.  The County also asserts that Plaintiff's counsel has expressed his intent to exceed the number of permitted depositions by this Court's CMO, and the County seeks an order limiting depositions.  The County's motion for a protective order is also directed at Plaintiff's notice for a Rule 30(b)(6) organizational deposition.  The County objects to a number of the deposition topics as being, among other things, overly broad and unduly burdensome.  The County seeks a protective order limiting these topics.  Plaintiff opposes all of the County's requests for relief.

#### 1.   Legal Standard

Federal Rule of Civil Procedure 26, which governs the scope of discovery in federal matters, provides the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 26(c), a party may move for a protective order pertaining to discovery requests in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party moving for the protective order" – here, the

County – "has the burden to demonstrate good cause for issuance of the order." Buehrle v. City of O'Fallon, Mo., No. 4:10-CV-509 AGF, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011).  To show good cause, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." Id. "Because of liberal discovery and the potential for abuse, the federal rules 'confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'"  Misc. Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 30, 36 (1984)).  With this standard in mind, the Court takes up each of the County's arguments in its Motion for Protective Order.

2.   Discussion of the County's Requests for Relief

a. *Plaintiff's discovery requests propounded before February 24, 2023.*

The County states in its motion that on January 14, 2023, Plaintiff served her Fourth Set of Interrogatories and her Sixth Requests for Production of Documents.  Plaintiff went on to serve her Seventh Requests for Production of Documents and Fifth Set of Interrogatories on January 23, 2023.  According to the County, "these requests combined with the previous requests for production have totaled eighty-three requests for production of documents, not including subparts, and thirty interrogatories, over the twenty-five interrogatory limit set by the Federal Rule of Civil Procedure 33."  (ECF No. 197 at 2).

The number of documents requests a party is allowed to propound is not limited by the Federal Rules of Civil Procedure or the CMO entered in this case.  Furthermore, the County did not provide the Court with what was asked in Plaintiff's Sixth and Seventh Requests for Production of Documents and, therefore, the Court cannot determine whether they are unjust or unreasonable. The County's motion is denied with regard to document requests made before February 24, 2023.

As for interrogatories, under the CMO, Plaintiff is entitled to ask the County 25 interrogatories, however, the "[t]his limit shall not include the discovery Plaintiff propounded prior to the Rule 16 conference in order to ascertain the names of unidentified defendants." (ECF No. 185). Based on the record before the Court, the evidence does not support the County's assertion that Plaintiff is over her interrogatory limit.[4] The County's Motion for Protective Order is denied with regard to interrogatories and document requests Plaintiff served on the County prior to February 24, 2023.

> *b. Plaintiff's discovery requests propounded on or after February 24, 2023.*

The County states in its motion that on February 24, 2023, Plaintiff served the County with her Eighth Requests for Production of Documents; on February 27, 2023, she served her Ninth Requests for Production of Documents; and On March 8, 2023, she served her Tenth Requests for Production of Documents, and her Seventh Set of Interrogatories.[5] The County objects to these written discovery requests as being untimely.

Under the CMO, the discovery completion deadline was March 24, 2023. Pursuant to the CMO, "Discovery requests must be served sufficiently prior to this date to allow the full response time before the completion date." (ECF No. 185). The County has 30 days to respond to Plaintiff's interrogatories and document requests. See Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). Plaintiff did not ask for extension of the discovery deadline prior to serving these discovery requests. Therefore, the Court finds that Plaintiff's Eighth, Ninth, and Tenth Requests for Production of

---

[4]The Court declines to address whether Plaintiff is over her interrogatory limit if subparts are included. Under the Federal Rules of Civil Procedure, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33. The County did not provide the Court with copies of the interrogatory requests. The Court does not have the record to make a determination with regard to Plaintiff's use of subparts.

[5]The County's Motion does not reference a Sixth Set of Interrogatories.

Documents and her Seventh Set of Interrogatories were untimely.  With regard to Plaintiff written discovery requests that were made on or after February 24, 2023, the County's Motion for Protective Order is granted.

> c.  *Depositions.*

The County states in its Motion for Protective Order that it has produced seven witnesses for deposition, and its co-defendants have produced one witness for deposition, none of whom were expert witnesses.  Therefore, according to the County, Plaintiff has taken eight of the ten depositions she is allowed under the CMO, a fact Plaintiff appears not to dispute.  The County states that Plaintiff has noticed or requested to schedule at least eight more individuals for deposition, in addition to the defendants' three expert witnesses.  In its Motion for Protective Order, the County asks the Court to preclude Plaintiff from taking depositions in excess of the ten allowed under the CMO and Fed. R. Civ. P. 30.

The County's motion is granted, in part.  Under the CMO and Fed. R. Civ. P. 30, Plaintiff is limited to 10 depositions.[6]  However, as addressed above, Plaintiff may be entitled to take additional deposition.  To the extent she has not already taken their depositions, Plaintiff may take the depositions of nurses and medical providers who the County identifies in its amended response to Interrogatory No. 11 of Plaintiff's First Set of Interrogatories.  These depositions are not subject to the 10-deposition limit.  In addition, Plaintiff may take the depositions of the defendants' disclosed experts.

> d.  *Objections to Rule 30(b)(6) organizational deposition.*

In its motion, the County asks the Court for a protective order regarding topics in Plaintiff's notice for a Rule 30(b)(6) organizational deposition.  On January 11, 2023, Plaintiff served the

---

[6]A Rule 30(b)(6) organizational deposition is subject to the 10-deposition limit.

County with a notice of deposition for a Rule 30(b)(6) organizational deposition to take place on February 10, 2023.  Plaintiff attached to the deposition notice a list of 24 deposition topics.  Plaintiff served a supplemental attachment on February 5, 2023, with 10 additional topics for the Rule 30(b)(6) deposition.

On February 8, 2023, the County served Plaintiff with "Responses" to Plaintiff's Rule 30(b)(6) deposition notice, in which the County objected to 9 of the 24 topics in Attachment A and 6 of the 10 topics in the Supplemental Attachment A.  The County also asked Plaintiff's Counsel to meet and confer prior to the February 10, 2023 deposition.  Plaintiff's counsel indicated he was not available to meet and confer before February 10, 2023.  According to the County, the deposition did not go forward, and counsel were able to meet and confer on February 27, 2023, regarding Plaintiff's proposed Rule 30(b)(6) deposition topics and the County's objections, but they have been unable to resolve their dispute over many of the objections.  The County asks the Court for a protective order to limit the topics for the Rule 3 (b)(6) deposition.

Under Fed. R. Civ. P. 30(b)(6), a party seeking an organizational deposition must describe with reasonable particularity in the notice of deposition matters for examination.  "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." Fed. R. Civ. P. 30(b)(6).  This requirement was added in 2020 in an effort to avoid "overlong or ambiguously worded lists of matters for examination and inadequately prepared witnesses." See id., 2020 Amendment Advisory Committee Notes.  The amendment forces "[c]andid exchanges about the purposes of the deposition and the organization's information structure[, which may in turn] clarify and focus the matters for examination, and enable the organization to designate and to prepare an appropriate witness or witnesses, thereby avoiding later disagreements." Id.

25

Based on the record, it appears the County had Plaintiff's Rule 30(b)(6) notice of deposition for almost a month without lodging any objections. It did not assert any objections until just prior to the deposition. Serving objections and proposing a meet-and-confer two days before the scheduled deposition is hardly in the spirit of Rule 30(b)(6) requirement that the parties promptly meet and confirm in good faith after the notice of deposition is served. That said, the Court also finds that it was not reasonable for Plaintiff's counsel to have added ten additional topics for the Rule 30(b)(6) deposition just four days prior to the scheduled deposition.

All this being said, the scheduled deposition did not occur, and the parties have now met and conferred in an attempt to resolve their differences. Based on the record, it appears the process has broken down, and the parties represent that they have unable to resolve their differences despite their efforts. Therefore, the Court rules as follows on the County's objections to the topics in the attachments to Plaintiff's notice of the Rule 30(b)(6) deposition:

*Attachment A to Notice of Deposition*

*Topic 1* – The County's objections are overruled.[7]

*Topic 2* – The County's objections to Topic 2 are sustained in that the Court will limit Topic 2 to August 4, 2012 through August 4, 2018. In all other respects, the objections are overruled.

*Topic 11* – The County's objection as to vagueness is sustained in part. Topic 11 shall be limited to any committee, standing committees, or other subgroups of St.

---

[7]The County's main objection to the topics is that they are unduly burdensome. As instructed by the Eighth Circuit:

A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required. Rule 26 requires a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.

Vallejo v. Amgen, Inc., 903 F.3d 733, 743 (8th Cir. 2018) (internal quotation marks and citations omitted). As a general matter, the County has not made a "particular and specific demonstration of fact" as to undue burden it faces in proceeding with the Rule 30(b)(6) deposition. Id.

Louis County Justice Services and/or St. Louis County Department of Health and/or corrections medicine from July 1, 2015 through December 31, 2016 that were responsible for (1) creating and reviewing policies, and performing training, oversight, and disciplinary functions regarding inmate medical care and medical treatment and (2) for reviewing deaths of inmates.  Topic 11 is further limited to identifying the committees and groups that existed and their function, compositions, policies and procedures, and types of documents that they would create, keep, and review.  Plaintiff may also inquire whether any such committee had any discussions regarding Mr. Starks.  In all other respects, the County's objections are overruled.

*Topic 12* – The County's objections to Topic 12 are overruled.

*Topic 16* – The County's objections to Topic 16 are overruled.

*Topic 17* – The County's objections to Topic 17 are overruled.

*Topic 19* – The County's objections to Topic 19 are overruled.[8]

*Topic 20* – The County's objections to Topic 20 are overruled.

*Topic 23* – The County's objections to Topic 23 are overruled.

<u>Supplemental Attachment A to Notice of Deposition</u>

*Topic 1* – The County's objection as to overbreadth is sustained in part.  Topic 1 is limited to the use of, transcription of, and retention, and method of retention of sick call forms created in August 2015.  Plaintiff may also inquire as to the retention and digital storage methods in place from August 2015 through today for sick call forms created in August 2015.   In all other respects, the County's objections are overruled.

*Topic 2* – The County's objections to Topic 2 are sustained in that the Court will limit Topic 2 to August 4, 2012 – August 4, 2018.  In all other respects, the objections are overruled.

*Topic 4* – The County's objection to Topic 4 is overruled.

*Topic 5* – The County's objections to Topic 5 are overruled.

---

[8]In its motion, the County argues that several of Plaintiff's topics should be limited because she is asking why an event occurred, or what an employee knew, and "a corporate representative is not expected to read the minds of the employees."  (ECF No. 197).  It is not expected that a corporate representative be clairvoyant, but it is expected that in preparing for a Rule 30(b)(6) deposition, that a corporate representative will speak to employees or others who are knowledgeable about the topics and not just rely on documents.

*Topic 6* – The County's objections to Topic 6 are sustained in that the Court will limit Topic 6 to August 4, 2012 through August 4, 2018.  In all other respects, the objections are overruled.

*Topic 10* – The County's objections to Topic 10 are overruled.

        3.     <u>Summary of the Court's Ruling on the County's Motion for Protective Order</u>

The County's Motion for Protective Order is granted in part.  The County's motion is granted to the extent that the Court finds written discovery Plaintiff's served on the County on or after February 24, 2023, was untimely under the CMO.  With regard to these discovery requests, the County's timeliness objections are sustained, and the County need not respond.  Plaintiff is also limited to 10 depositions under the CMO, with the exception that to the extent she has already deposed these individuals, Plaintiff may take the depositions of nurses and medical providers who the County identifies in its amended response to Interrogatory No. 11 of Plaintiff's First Set of Interrogatories.  As for Plaintiff's Rule 30(b)(6) Notice of Deposition, the County's objections are overruled and sustained as set forth above.  The Court does note that Plaintiff's list of topics for the Rule 30(b)(6) deposition is extremely ambitious.  The County may designate more than one person to testify, but the deposition is limited to seven hours in length.  In all other respects, the County's Motion for Protective Order is denied.

    **C.**    **Plaintiff Motion for Extension of Time to Depose Expert Witnesses**

Plaintiff moves for an extension of time to take the deposition of Defendants Heitman, Susman, Pierce, Khan, and Gunn's expert witness, David Greengart, M.D.  Plaintiff states her motion is with consent, and the defendants have not filed an opposition.  Therefore, Plaintiff's motion is granted.

### D.      Plaintiff's Motion to Amend the Case Management Order

Finally, Plaintiff moves that the Court modify the CMO in this case, a motion which all the defendants oppose.  Specifically, Plaintiff asks the Court to (1) modify the existing CMO to allow Plaintiff additional time for discovery and to allow Plaintiff to amend her complaint at the close of this extension, with the parties to submit a joint progress report within one-hundred-twenty (120) days or alternative time designated by the special master; (2) to permit Plaintiff to conduct additional depositions in excess of her presumptive limit of ten (10) depositions and order that County is to pay for the reasonable costs and expenses of the depositions previously conducted and additional depositions; (3) to permit Plaintiff to exceed her presumptive limit of twenty-five interrogatories; (4) to appoint a special master at County's expense; (5) to designate a forensic computer expert, selected by this Court or by Plaintiff, to obtain a mirror image and metadata of County's Department of Corrections Medicine's hard drives, including but limited to the "J-drive" as described by Ms. Duffie; (6) to impose monetary sanctions against County to compensate Plaintiff for her costs and expenses resulting from County's ongoing discovery misconduct.

For the reasons set forth above, the Court will modify the CMO to allow for the completion of limited discovery and to extend Plaintiff's deadline to respond to the defendants' pending motions for summary judgment.  In all other respects, the relief Plaintiff requests in her Motion to Modify the CMO is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Margaret Starks's Motion for Default Judgment, Stay of the Discovery Deadline, for Sanctions, and for Appointment of a Special Master against Defendant St. Louis County is **DENIED.**  (ECF No. 195).

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, **before May 5, 2023,** Defendant St. Louis County shall (1) search for documentation, in electronic format on a shared drive and in paper format in the nurse manager's office, related to Drexel Starks's death and review of his death by the medical department, as described by Cathy Duffie during her deposition; and (2) amend its response to Interrogatory No. 11 of Plaintiff's Second Set of Interrogatories and disclose any responsive documents or indicate none were found.

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, **before May 5, 2023,** Defendant St. Louis County shall amend its response to Interrogatory No. 11 of Plaintiff's First Set of Interrogatories.  For the timeframe between 8:00 p.m., August 5, 2015, through 2:00 p.m., August 6, 2015, the County shall identify the following: (1) nurses and medical providers who were scheduled or assigned to Drexel Starks; and (2) medical providers who were responsible for providing Drexel Starks medical care, monitoring his participation in the "Clonidine Protocol," and/or dispensing medication to him.

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, Plaintiff may take the depositions of the nurses and medical providers who the County identifies in its amended response Interrogatory No. 11 of Plaintiff's First Set of Interrogatories, to the extent that the persons the County identifies have not already been deposed by Plaintiff during discovery in this case.  Depositions shall be completed **before June 5, 2023.**

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, **before May 5, 2023,** Defendant St. Louis County shall (2) search for the written complaints Connie Heitman described in her deposition; and (2) amend its response to Interrogatory No. 7 of Plaintiff's Second Set of Interrogatories and disclose any such complaints or indicate none were found.

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, Defendant St. Louis County's Motion for Protective Order is **GRANTED in part, DENIED in part**.  (ECF No. 197).  The motion is **GRANTED** to the extent that: (1) Plaintiff's Eighth, Ninth, and Tenth Requests for Production of Documents and her Seventh Set of Interrogatories were untimely, and the County's timeliness objections are sustained; (2) Plaintiff shall be limited to 10 depositions under the Case Management Order, with the exception that Plaintiff may take depositions in excess of the 10-deposition limit for nurses and medical providers who the County identifies in its amended response to Interrogatory No. 11 of Plaintiff's First Set of Interrogatories to the extent these individuals have not already deposed during discovery in this case; and (3) the County's objections to Plaintiff's Rule 30(b)(6) Notice of Deposition are overruled and sustained as set forth above in the body of this Memorandum and Order.  In all other respects, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Margaret Starks's Motion for an extension of time to depose expert witnesses is **GRANTED**.  (ECF No. 206).  Plaintiff shall have up to **June 5, 2023**, to depose defendants' expert witness, David Greengart, M.D.

**IT IS FURTHER ORDERED** that consistent with the terms of this Memorandum and Order, Plaintiff Margaret Starks's Motion for Modification of the Case Management Order, Leave to Exceed the Presumptive Limit of Ten Depositions and Twenty-Five Interrogatories and for Appointment of a Special Master is **GRANTED in part and DENIED in part**.  (ECF No. 229). Plaintiff's motion is **GRANTED** to the extent that (1) Plaintiff shall have up to **June 5, 2023**, to complete depositions in this case; (2) Plaintiff shall file responses to the defendants' pending motions for summary judgment by **July 5, 2023**; (3) any reply brief may be filed by **July 19, 2023**. In all other respects, the motion is **DENIED.**

**IT IS FUTHER ORDERED** that the August 7, 2023 trial date is **VACATED.**  The Court shall reset this case for trial at a later date.


_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  25th   day of April 2022.