IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **Margaret Starks, mother of deceased Drexel Starks.** | ) ) ) |
| **Plaintiff,** | ) ) ) ) ) ) |
| **v.** | ) Cause No. 4:21-cv-00435-RLW ) ) |
| **St. Louis County et al.,** | ) ) |
| **Defendant.** | ) ) |

## DEFENDANTS ST. LOUIS COUNTY AND CEDRIC IVY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants St. Louis County, Missouri ("Defendant County") and Cedric Ivy ("Officer Ivy") (collectively "County Defendants"), and submit this Memorandum of Law in Support of their Motion for Summary Judgment, stating as follows:

### INTRODUCTION

On June 21, 2023, Plaintiff Margaret Starks' Fourth Amended Complaint (the "Complaint") was filed asserting claims against four (4) additional defendants, while leaving the claims against Defendants County and Ivy relatively unchanged. (Docs. 247, 269). In the Complaint, Plaintiff named four new defendants, Reginald Tinoco, Rita Hendrix, Fay Crancer, and Debra Tucker. *Id*. Plaintiff's Complaint alleges: (1) Deprivation of Medical Care Pursuant to the Eighth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Defendants Susman, Heitman, Tinoco, Tucker, Ivy and Trachsel;[1] (2) Unlawful Policy (*Monell* liability) against Defendant County; (3) Unlawful Pattern, Practice, and/or Custom (*Monell* liability) against Defendant County; (4) Failure to Train, Supervise, and/or Discipline against

---

[1] Defendants Susman, Heitman, and Trachsel were subsequently dismissed from this case. (Docs. 271, 272). An Amended Complaint was not filed following their dismissal.

1

Defendants County, Khan, Gunn, Crancer, and Hendrix.[2] After filing her Fourth Amended Complaint, Plaintiff voluntarily dismissed all the original defendants, save Defendants County and Officer Ivy. (Docs. 271, 272).

Plaintiff alleges Officer Ivy was deliberately indifferent to Decedent Drexel Starks' ("Decedent Starks") serious medical needs by failing to provide him with medical care while he was incarcerated at the St. Louis County Jail (the "Jail") from approximately 12 p.m. August 4, 2015, to approximately 3:00 p.m. on August 6, 2015, when St. Louis County employees began performing lifesaving measures on Decedent Starks. (Doc. 269, pp. 16-17, 19-21; Statement of Undisputed Material Facts "SUMF" ¶¶ 5-6, 52-54). Plaintiff has also alleged Codefendants Tinoco and Tucker were deliberately indifferent toward Mr. Starks' serious medical needs. (Doc. 269, pp. 19-21). Plaintiff further alleges at the time of Decedent Starks' death, Defendant County maintained an unlawful policy, practice, and custom within the Jail, and further failed to properly train, supervise, and/or discipline employees, all of which purports to equate to a violation of Decedent Starks' constitutional rights. (Doc. 269, pp. 21-27). The Complaint also alleges Codefendants Crancer and Hendrix are liable for failure to train, supervise, and/or discipline. *Id*. at pp. 25-27.

Officer Ivy, a correctional officer, is entitled to summary judgment because Plaintiff has not established and cannot establish facts demonstrating he was deliberately indifferent toward any serious medical need of Decedent Starks. Additionally, Defendant Ivy is entitled to qualified immunity. Defendant County is also entitled to summary judgment because Plaintiff has not established and cannot establish any of its policies, practices, or customs were unlawful, that any County employee violated Decedent Starks constitutional rights, that any conduct of any County employee was the moving force

---

[2] Defendants Khan and Gunn were subsequently dismissed from this case. (Docs. 271, 272). An Amended Complaint was not filed following their dismissal.

that caused Decedent Starks's death, or that County failed to properly train, supervise, and/or discipline its employees.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be rendered if the pleadings, the discovery, disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute on those facts. *Id.* When the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no "'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, (1986).

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court held summary judgment is mandatory if there is no genuine issue as to any material fact for trial, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. A party opposing summary judgment bears the burden to respond, not simply by resting on the pleadings, but setting out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants County and Officer Ivy incorporate by reference their Statement of Undisputed Material Facts, filed concurrently, as if fully set forth here.

## ARGUMENT

I. **Plaintiff Cannot Establish a Prima Facie Deprivation under 42 U.S.C. § 1983.**

To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must show Decedent Starks' constitutional rights were violated under the color of state law. The Supreme Court has held, "[t]o state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49, 50 (1999).

"'[T]he Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs.'" *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) (quoting *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006)). A pretrial detainee's claims fall under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment but are analyzed in the same manner. *Id*. (a pretrial detainee is entitled to the same protection as that afforded convicted prisoners under the Eighth Amendment).

 A. **Plaintiff Fails to Establish a Constitutional Violation under the Fourteenth Amendment.**

A Plaintiff's ability to prevail on a claim of constitutionally inadequate medical care, requires evidence the defendants "act[ed] with deliberate indifference to the prisoner's serious medical needs." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Inadequate medical care claims have an objective component and a subjective component. *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff must prove (1) Decedent Starks had an *objectively* serious medical need and (2) prison officials *subjectively* knew of that need, but deliberately disregarded it. *Id*. The Eighth Circuit has held, "[p]rison officials violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to a pretrial detainee's objectively serious medical needs." *Ivey v. Audrain Cnty., Missouri*, 968 F.3d 845, 848 (8th Cir. 2020),

referencing *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020). The Eighth Circuit further stated, "[t]o succeed on this kind of claim, a plaintiff must demonstrate that a pretrial detainee had an objectively serious medical need that the defendants knew of and yet deliberately disregarded." *Id*.

In *Luckert v. Dodge County*, the Eighth Circuit described deliberate indifference as "akin to criminal recklessness," "greater than gross negligence," and exhibiting a "highly culpable state of mind approaching actual intent." *Luckert*, 684 F.3d at 818. Here, there is no evidence any defendant acted with anything close to intentional or even criminal recklessness in their interactions with Decedent Starks.

### 1. Plaintiff Cannot Prove Officer Ivy Deliberately Disregarded Decedent Starks' Serious Medical Need.

To be found "deliberately indifferent," an official must "'know[ ] of and disregard[ ]'" a serious medical need or a substantial risk to an inmate's health or safety. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (citations omitted). Constructive knowledge is insufficient; Plaintiff must "show that [defendant] had been exposed to information concerning the risk and thus must have known about it." *Id*. Alternatively, Plaintiff must show the risk was so obvious that knowledge can be inferred. *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). Deliberate indifference also requires Plaintiff to "prove that [each defendant] deliberately disregarded that risk by showing that [they] knew that [their] conduct was inappropriate in light of the risk." *Letterman*, 789 F.3d at 862 (quotations and citation omitted).

To prove deliberate indifference to a serious medical need, a plaintiff must show "more than negligence, more even than gross negligence . . ." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). (quotation marks and citation omitted). The Supreme Court has previously observed "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Rellergert by Rellergert v. Cape Girardeau Cnty.*, 924 F.2d 794, 796 (8th Cir. 1991) (deliberate indifference is a difficult burden for a plaintiff to meet and thus becomes the key issue). "The subjective standard is akin to

that of criminal recklessness: the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference before acting—or failing to act—with a conscious disregard for the risk." *Blair v. Bowersox*, 929 F.3d 981, 987–988 (8th Cir. 2019) (quotation marks and citation omitted); *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006); *Vaughn v. Gray*, 557 F.3d 904 (8th Cir. 2009). "To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be '*so obvious* that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (emphasis added)). Thus, if there is not a diagnosis at the time of the incident, then the need must be obvious to a layperson. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Plaintiff cannot establish any personally exhibited deliberate indifference to Decedent Starks' Constitutional rights. Officer Ivy was not responsible for providing direct medical care to detainees, and the Eighth Circuit has held it is appropriate for correctional staff to defer to medical professionals. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (citing *Estelle*, 429 U.S. at 104–05 (while deliberate indifference may be manifested by prison officials intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment, "prison officials cannot substitute their judgment for a medical professional's prescription.")). (internal citations omitted). Thus, Officer Ivy may only be found to be deliberately indifferent if he intentionally denied or delayed Decedent Starks' medical care or prescribed treatment.

Plaintiff also cannot establish Decedent Starks' medical need was so obvious even a lay person, like Officer Ivy, would have easily recognized the need. The uncontroverted evidence shows Decedent Starks was experiencing withdrawal from opiates even before being booked at the Jail, according to his

6

own admissions and Nurse Connie Heitman's observations at his medical intake on the afternoon of August 4, 2015. (SUMF ¶¶ 5-10, 15-18). Nurse Heitman appropriately started Decedent Starks on the Clonidine treatment protocol (the "Protocol") to provide some form of comfort to Decedent Starks while he was withdrawing from daily opiate use. (SUMF ¶¶ 8, 19, 23). Later, on August 4, 2015, and on August 5, 2015, Decedent Starks was monitored by other medical staff, including Nurses Melissa Susman and Sarah Broadwater (formerly Mueller), who both noted his symptoms remained consistent with someone withdrawing from opiates. (SUMF ¶¶ 24-27, 31-35).

Nurses Heitman, Susman, and Broadwater all noted the jail's population had many people withdrawing from controlled substances and therefore, they were familiar with the symptoms that typically accompany withdrawal. (SUMF ¶¶ 9, 10, 14, 27, 57, 82-83). When Nurse Tonia Dalcour arrived at Decedent Starks' cell, she observed him on the floor. (SUMF ¶ 36). Decedent Starks was assisted to his bunk by a correctional officer. (SUMF ¶ 37). Patient records show Decedent Starks could talk with Nurse Dalcour and stated he was "okay." (SUMF ¶ 36). Despite Decedent Starks's assurance that he was "okay" and in accordance with policy, Nurse Dalcour contacted the nurse practitioner on duty to inform her Decedent Starks needed to be transported to the infirmary for further assistance when she could not assess his medical condition in his cell. (SUMF ¶¶ 36-42). Correctional officers assisted Mr. Starks in getting into a wheelchair and took him directly to the infirmary. (SUMF ¶¶ 44-46). Upon arriving at the Jail infirmary, Decedent Starks was immediately assessed by nursing staff. (SUMF ¶¶ 47-50). When Decedent Starks continued to have medical issues, a 9-1-1 call was ordered by Captain William Trachsel. (SUMF ¶¶ 81, 85-87, 90). Additionally, a medical emergency Code 1 was called, Decedent Starks was placed on an IV, and medical staff immediately began CPR and continued their efforts until Clayton EMS arrived to take over resuscitation efforts. (SUMF ¶¶ 51-55).

There is no evidence Officer Ivy had notice or awareness, as a nonmedical professional, of the seriousness of Decedent Starks' opiate withdrawal – for which he was receiving treatment – nor any evidence Officer Ivy engaged in any conduct to deny or delay medical care for Decedent Starks. *Meloy*, 302 F.3d at 849. Thus, Officer Ivy was not deliberately indifferent toward any serious medical need of Decedent Starks, and he is therefore entitled to summary judgment as a matter of law.

**2. Plaintiff Fails to Prove Officer Ivy had Any Personal Involvement in Any Alleged Violation of Decedent Starks' Constitutional Rights.**

The burden is on Plaintiff to establish a *prima facie* claim that each individual defendant was deliberately indifferent to Decedent Starks' alleged serious medical need. "Government officials are personally liable only for their own misconduct." *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 418 (8th Cir. 2017) (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)). Without personal involvement a defendant cannot be found to have violated 42 U.S.C. § 1983. "Liability under 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (internal citations omitted). Plaintiff must prove Officer Ivy personally exhibited deliberate indifference toward Decedent Starks' constitutional rights to recover against him for the alleged constitutional violations. *Scheeler v. City of St. Cloud*, 402 F.3d 826, 831 (8th Cir. 2005). No such evidence exists here.

Officer Ivy reported to his assigned post on August 6, 2015, as expected, like he has throughout his more than 25 years of service at the Jail. (SUMF ¶¶ 62, 63, 70-71). The evidence shows Officer Ivy was working in the housing unit and conducting regular tours of the unit per DJS policy. (SUMF ¶¶ 59, 62, 68, 70-71, 74, 77). The only notation in Decedent Starks' records during Officer Ivy's assigned shift indicates one of Officer Ivy's coworkers in the housing unit noted Mr. Starks refused to cooperate with medical, refused to engage in his legal visit, told Officer Ivy he was "not getting up," and refused to eat his lunch. (SUMF ¶¶ 74-78). Decedent Starks had the right to refuse these interactions in the Jail,

8

including medical assistance. (SUMF ¶¶ 23, 78). And despite his refusal, Officer Ivy sought to aid Decedent Starks. Officer Ivy's actions are the antithesis of deliberate indifference, as he identified that Decedent Starks may need assistance and he sought assistance for him.

As stated above, Plaintiff has not alleged and the evidence does not demonstrate any of Decedent Starks' actions or anything about Starks' appearance during the approximately 48 hours he was incarcerated at the Jail rose to the level of seriousness that a lay person, like Officer Ivy, should or would know of his need for immediate medical treatment. (SUMF, *passim*). Given the facts that Officer Ivy carried out his tours as required and ensured his interaction with Decedent Starks was properly recorded in the IJMS record, there is no factual basis to support Officer Ivy was ever deliberately indifferent toward any alleged serious medical need of Decedent Starks.

## B. Officer Ivy Is Entitled to Qualified Immunity.

Plaintiff has not, nor can she, establish a claim against Officer Ivy under 42 U.S.C. 1983. However, even assuming arguendo that she did, as a government employee, Officer Ivy is entitled to qualified immunity. Qualified immunity protects government employees while carrying out their duties. *See Malley v. Briggs*, 475 U.S. 335, 341-43 (1986) (holding qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Qualified immunity asks whether a public official's actions were "unreasonable" under clearly established law. *N.S. v. Kansas City Bd. of Police Comm'rs*, 933 F.3d 967, 970 (8th Cir. 2019). The Eighth Circuit has held, "[o]ur test for qualified immunity has two parts: (1) whether there is sufficient evidence the officer 'violated a constitutional right,' and (2) whether the "constitutional right [the officer violated] was so 'clearly established' at the time of the alleged violation that a reasonable officer would have known that his conduct was unlawful.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1211 (8th Cir. 2013) (quoting *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009)); *Hess v. Ables*, 714 F.3d 1048 (8th Cir. 2013).

Here, there is no evidence of a constitutional violation by Officer Ivy. There are no facts to support even a mistake or failure to act by Officer Ivy, much less the facts required to establish a constitutional violation. Therefore, Officer Ivy is entitled to qualified immunity under the first prong of the analysis laid out by the Court in *Atkinson*.

"Whether a right is 'clearly established' is a question of law for the court to decide." *Atkinson*, 709 F.3d at 1211 (quoting *Rohrbough*, 586 F.3d at 586). The Court clarified, "'[f]or a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Atkinson*, 709 F.3d at 1212 (quoting *Buckley v. Rogerson*, 133 F.3d 1125, 1128 (8th Cir. 1998) (internal quotes and citations omitted)).

No "reasonable" officer would assume while observing a detainee withdrawing from opiates, like Decedent Starks, who is displaying the normal range of symptoms associated with withdrawal and able to communicate with jail staff, that the detainee is about to suffer a fatal incident. Plaintiff has established no evidence any action, or alleged inaction, by Officer Ivy was unreasonable. Thus, Plaintiff's claims also fail the second prong of the *Atkinson* analysis. For these reasons, Officer Ivy is entitled to qualified immunity, and thereby immune from suit.

**C. Plaintiff Cannot Prove Defendant County has an Unlawful Pattern, Practice, or Custom to Establish Municipal Liability Under § 1983.**

Defendant County "may be held liable under § 1983 only if the alleged constitutional violation was caused by an action pursuant to official municipal policy of some nature." *Meier v. St Louis*, 934 F.3d 824, 827 (8th Cir. 2019) (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (en banc), quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Circuit has held, "[i]t is well established

10

'that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor.'" *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (citing *Atkinson*, 709 F. 3d at 1207 (8th Cir. 2013), quoting, 486 F. 3d at 389). Furthermore, "a county is liable if an action or policy itself violated federal law, or if the action or policy was lawful on its face but 'led an employee to violate a plaintiff's rights [and] was taken with "'deliberate indifference'" as to its known or obvious consequences.'" *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978, 982 (8th Cir. 2006) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

In *Pietrafeso*, the Court found "Lawrence County's policies and practices for providing inmates with needed medical care were lawful on their face." *Id*. Thus, Pietrafeso's claim the policies were constitutionally inadequate required proof that at least one of the individual defendants violated Rocco's constitutional rights and caused the alleged injury. *Pietrafeso*, 453 F.3d at 982.

Plaintiff has established no evidence Defendant County's policies related to providing medical care for detainees violate the Constitution or any law. Indeed, the actions of Defendant County's employees show they affirmatively acted to provide Decedent Starks with medical treatment, not that they were deliberately indifferent to his needs, nor that the County tacitly authorized any unconstitutional conduct. (SUMF, *passim*). There is also no evidence that a policy, or any alleged failure to follow a policy, caused any County employee to act with deliberate indifference toward the rights of Plaintiff or Decedent Starks. (SUMF, *passim*). The Jail is served by two departments, the Department of Justice Services (DJS), which oversees those individuals responsible for safety and security, and the Department of Public Health, which manages Corrections Medicine, those medical professionals responsible for providing detainees with medical care and treatment. (SUMF ¶ 3). Both DJS and Corrections Medicine have policies in place to ensure detainees have access to health care 24 hours a day, seven days a week. (SUMF ¶¶ 3, 10-14, 23, 576, 62, 67, 95-97). Moreover, St. Louis County DJS, including Corrections

11

Medicine, is fully accredited by the American Correctional Association ("ACA"). (SUMF ¶¶ 95-97). Courts around the country have held, "[r]elevant accreditation is prima facie evidence of constitutionally adequate conditions." *Brooks v. Flaherty*, 902 F.2d 250, 253 (4th Cir. 1990), referencing *Woe v. Cuomo*, 729 F. 2d 96, 106-107 (2nd Cir. 1984). There is therefore no evidence that the actions of any defendant or Defendant County's policies violated the Constitution.

Plaintiff also cannot show Defendant County condoned an unconstitutional custom or practice. "To establish a claim for "custom" liability, [plaintiff must] demonstrate: 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom i.e., that the custom was a moving force behind the constitutional violation." *Thelma D. ex rel. Delores A. v. Bd. Of Educ. Of City of St. Louis*, 934 F. 2d 929, 932-33 (8th Cir. 1991) (quoting *Jane Doe A v. Special Sch. Dist. Of St. Louis*, 901 F. 2d 642, 646 (8th Cir. 1990).

None of Plaintiff's claims equate to unconstitutional conduct by any of County's employees, nor are they based in fact. The evidence demonstrates employees of Defendant County examine inmates prior to even booking them into custody to ensure they are fit for confinement, and that these employees are more than competent to perform the tasks they are assigned. (Doc. 269, Case Caption, ¶¶ 5-6, 8-12; SUMF ¶¶ 5-11, 16, 18, 21-22, 25-29, 36, 38-40, 50, 54-55, 57). The evidence shows that the Jail has established procedures for jail staff to contact 9-1-1 in an emergency to ensure the safety of everyone involved when escorting outside individuals through the secured area of the Jail. (SUMF ¶ 88). None of the evidence established in this case rises to the level of a custom or practice that Defendant County has tacitly authorized.

Rather, the evidence in this case demonstrates that County employees acted according to policy and practice to: perform an assessment of Decedent Starks' health even prior to booking him into custody (SUMF ¶ 5, 7-10, 15, 17-18); appropriately placed him on the Protocol to potentially provide him comfort while withdrawing from opiates (SUMF ¶ 19-22); completed assessments of Decedent Starks during the 48 hours he was in the Jail (SUMF ¶¶ 24-29, 31-35); contacted medical staff after observing Decedent Starks in distress (SUMF ¶¶ 36-41, 74, 82); conveyed Decedent Starks to the Jail infirmary for additional treatment (SUMF ¶¶ 42-46); timely contacted Clayton EMS (SUMF ¶¶ 87, 90); and treated and performed life saving measures on Decedent Starks until Clayton EMS arrived (SUMF ¶¶ 47-55). As such, the evidence contradicts Plaintiff's claims against St. Louis County for municipal liability under § 1983 and therefore must fail.

### D. Plaintiff Fails to Prove Defendant County is Liable for Failure to Train, Supervise, or Discipline.

Plaintiff offers insufficient evidence to show Defendant County failed to train, supervise, or discipline its employees. In *City of Canton v. Harris*, the U.S. Supreme Court held, "they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." 489 U.S. 378, 392 (1989). The Eighth Circuit has built on that foundation, finding, "[i]t is well-established that § 1983 claims based on the [municipal entity's] failure to train its employees require proof that "(1) the [municipal entity's] training practices [were] inadequate; (2) the [municipal entity] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the municipal entity]'; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury." *B.A.B., Jr. v. Brd. of Educ. of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (quoting *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)); *See also Grayson v. Ross*, 454 F.3d 802 (2006). "Plaintiffs must prove that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional

13

rights, that the policymakers of the [municipal entity] can reasonably be said to have been deliberately indifferent to the need.'" *B.A.B., Jr.*, 698 F.3d at 1040 (quoting *Parrish*, 594 F. 3d at 998). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness." *B.A.B., Jr.*, 698 F.3d at 1040 (quoting *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)). Therefore, Plaintiff must prove: (1) St. Louis County's training practices were inadequate; (2) St. Louis County was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by St. Louis County; and (3) an alleged deficiency in the training procedures caused the plaintiff's injury. *B.A.B., Jr.*, 698 F.3d at 1040 (quoting *Parrish*, 594 F.3d at 998).

Plaintiff cannot show the employees of St. Louis County were inadequately trained, the County was deliberately indifferent by adopting these training practices, or that the alleged deficient training procedures caused Plaintiff's injury. The facts demonstrate the nurses on staff were certified, licensed nurses, including licensed practical nurses and registered nurses. (SUMF ¶¶ 3, 57). There were also medical assistants, who were able to assist nursing staff, but could not conduct their own medical assessments or pass out medication. (SUMF ¶¶ 28-30). Along with their nursing training, the individuals working in Corrections Medicine also received on the job training in assisting individuals going through withdrawal, as they encountered individuals experiencing withdrawal daily while they were working with detainees. (SUMF ¶¶ 9, 10, 14, 27, 57, 82-83). As discussed thoroughly throughout this memorandum, Corrections Medicine staff were familiar with the typical signs and symptoms of those undergoing withdrawal and were prepared to assist those individuals. (SUMF ¶¶ 9, 10, 14, 27, 57, 83-84). They were also trained that individuals had the right to refuse medical treatment if they so desired. (SUMF ¶¶ 23, 78).

On top of the training and medical expertise of the licensed professionals working in Corrections Medicine, all employees working in the Jail receive training and policies to address common

scenarios encountered in a correctional facility. Additionally, as noted above, St. Louis County DJS, including Corrections Medicine, is fully accredited by the ACA. (SUMF ¶¶ 94-96), which should be considered prima facie evidence the conditions and training at the Jail are constitutionally adequate. *Brooks*, 902 F.2d at 253; *Woe*, 729 F. 2d at 106-107. Correctional officers and other employees of the Jail also receive training on various policies and procedures, including training in CPR and First Aid to handle emergent situations which may arise in the Jail. (SUMF ¶¶ 64-67, 80-81, 95-97). While the medical care of detainees rightly falls under the responsibility of Corrections Medicine, correctional officers are aware of the procedures for and able to call the Corrections Medicine staff for assistance when detainees require medical attention. (SUMF ¶¶ 8-81).

Decedent Starks' cause of death was determined to be an "unexpected death in patient withdrawing from heroin and cocaine with dehydration and cardiac dysrhythmia." (SUMF ¶ 92). There is no evidence Decedent Starks' death was caused by any employee of St. Louis County. (SUMF, *passim*). Since there is no evidence any of St. Louis County's employees, or any deficiency in their training, caused Plaintiff's injury, the inquiry should stop there. Even if the Court were to look at the other two prongs of this analysis, Plaintiff has no evidence St. Louis County was deliberately indifferent to the rights of others when adopting its training policies or that there was a "failure to train" relative to this situation. *B.A.B., Jr.*, 698 F.3d at 1040 (quoting *Parrish*, 594 F.3d at 998). (SUMF, *passim*).

## CONCLUSION

It is Plaintiff's burden to prove deliberate indifference and establish *Monell* liability (*See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978), holding "[i]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Plaintiff has failed to establish facts proving Officer Ivy was deliberately indifferent to

any alleged serious medical need of Decedent Starks, and she has failed to establish Defendant County had any unlawful policy as alleged in Count II, any unlawful pattern, practice, and/or custom as alleged in Count III, or that Defendant County failed to train, supervise, and/or discipline its employees. Plaintiff has also established no facts that would implicate 42 U.S.C. § 1988. For all the reasons outlined here and established in County Defendants' accompanying Statement of Undisputed Material Facts, Plaintiff has failed to prove facts supporting the claims in her Complaint or to overcome qualified immunity. County Defendants are therefore entitled to summary judgment as a matter of law.

WHEREFORE, County Defendants respectfully request this Honorable Court grant both Defendant Ivy and County summary judgment on all of Plaintiff's claims, or alternatively, find Defendant Ivy is entitled to qualified immunity and for any further relief the Court deems just and proper under the circumstances.

        Respectfully Submitted,

        DANA T. REDWING
        ST. LOUIS COUNTY COUNSELOR

By:   /s/ Portia Britt
      Portia Britt, #69016
      Rachel D. Schwarzlose, 57269
      Associate County Counselors
      Office of the County Counselor
      41 S. Central Avenue
      Clayton, Missouri 63105
      (314) 615-7038
      (314) 615-3732 (fax)
      PBritt@stlouiscountymo.gov
      rschwarzlose@stlouiscountymo.gov
      *Attorneys for Defendants St. Louis County and Ivy*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **Margaret Starks, mother of deceased Drexel Starks.** | ) ) ) |
| **Plaintiff,** | ) ) ) ) ) |
| **v.** | ) Cause No. 4:21-cv-00435-RLW ) ) |
| **St. Louis County et al.,** | ) ) |
| **Defendant.** | ) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 13th day of November, 2023, the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court to be served by operation of the Court's CM/ECF filing system upon all counsel of record.

Respectfully Submitted,

**DANA T. REDWING
COUNTY COUNSELOR**

By:   /s/ Portia Britt
Portia Britt, #69016
Rachel D. Schwarzlose, 57269
Associate County Counselors
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 615-7038
(314) 615-3732 (fax)
PBritt@stlouiscountymo.gov
rschwarzlose@stlouiscountymo.gov
*Attorneys for Defendants St. Louis County and Ivy*