EXHIBIT 4

November 16, 2022

Mr. Pedroli,

*Below are my observations and opinions regarding Drexel Starks and his 2015 medical treatment and death at the St. Louis County Buzz Westfall Justice Center. My opinions are preliminary based on the documents and information that you provided to me, however, I understand you may be provided further information and in that case, I may amend these opinions. After review of the records provided to me, I have based my opinions on the following:*

*On August 4, 2015 Drexel Starks a 51-year-old male was placed into detention at the Justice Center. At the time of his intake, Mr. Starks was examined by nurse Connie Heitmann, R.N. In her medical notes, Nurse Heitmann recorded that Mr. Starks admitted to previous opiate drug use and reported a pain level of 10/10. Nurse Heitmann placed Mr. Starks on a "Clonidine Protocol" to treat Mr. Starks' for "acute withdrawal syndrome," per standing orders. As prescribed in the protocol for treatment of acute withdrawal syndrome Mr. Starks was to receive certain medications, including:*

- *Clonidine, 0.1 mg and 0.2 mg tablets, to be given twice daily (at 0900 and 2100 hours)*
- *Folic Acid, 400 mcg, to be given once daily (at 0900 hours);*
- *Multivitamin, to be given once daily (at 0900 hours);*
- *Thiamine, 100 mg, to be given once daily (at 0900 hours);*
- *Pink Bismuth, to be given three times daily (at 0900, 1700, and 2100 hours);*
- *Acetaminophen, 325 mg, 2 to 3 tablets to be given three times daily (at 0900, 1700, and 2100 hours); and*
- *Emetrol, 1.87-1.87-21.5 oral solution, 10 cc to be given three times daily (at 0900, 1700, and 2100 hours).*

Per the protocol, Mr. Starks physical condition was to be assessed twice daily at 0900 and 2100 hours. During these assessments, jail medical staff were to take Mr. Starks' blood pressure as well as evaluate his skin temperature, speech, gait, eyes, hands, tongue, and mouth. As further provided in the treatment protocol, jail medical staff were to "monitor B/P BEFORE each dose of Clonidine and hold Clonidine if systolic blood pressure is less than 90 mm Hg OR if pulse less than 60 bpm." and the "Medication Administration Record" orders nurses to hold doses if systolic blood pressure is below 100. Additionally, per the Clonidine Protocol: "If patient is symptomatic, e.g. tremors, dehydration, lightheadedness, then schedule patient to be seen by Medical Provider. If the nurse is concerned that the patient is hemodynamically unstable, call the medical provider."

Per the protocol and orders Mr. Starks was to be given medications three times per day at 0900, 1500, and 2100 hours and his blood pressure was to be taken and his physical condition was to be evaluated twice daily at 0900 and 2100 pursuant to the Withdrawal Checklist. But according to the jail medical records the last time Mr. Starks received medications and was observed or treated was at 8:42 a.m., on August 5, 2015 and he was later found in his cell in critical condition and near death at approximately 1400 hours on August 6, 2015. Based on the records, jail staff failed to provide Mr. Starks with his medications and/or conduct their required check of his blood pressure and evaluation of his physical condition on at least three occasions, at 1700 and 2100 hours, on August 5, 2015, and at 0900 hours, on August 6, 2015. Then during Mr. Starks last nursing visit, at 0842 hours on August 5, 2015, it was noted by the observing medical assistant that Mr. Starks' blood pressure was 90/50 and this fact was concerning enough to her that she notified her supervisor "Nurse Melissa". But despite the standing medical orders and the reporting of concerns about Mr. Starks' blood pressure there are no further records demonstrating that Mr. Starks was provided with any medical care at all for over approximately 29 hours.

My opinions are as follows. Jail personnel failed to provided Drexel Starks with adequate and appropriate care for a known medical condition and need. Jail personnel failed to follow the

standing orders for the Clonidine Protocol and the treatment of acute withdrawal syndrome which required that Mr. Starks be provided daily with certain medications as well as observed on a prescribed schedule. Medical personnel knew at Intake about Mr. Starks acute medical need as they diagnosed him with acute withdrawal syndrome and prescribed a specific course of treatment. But according to the medical records Mr. Starks was not treated for a period of over 29 hours which led directly to his death. He was in excruciating pain throughout this process. His death was avoidable. The failure to treat Mr. Starks is outrageous. In the time leading up to his death, Mr. Starks would have likely been suffering from enormous pain, disorientation, confusion, nausea, and distress, at minimum, and also likely vomiting and diarrhea that led to his dehydration. Jail and medical personnel should have gone into Mr. Starks cell to observe him, treat him, and perform the examinations on the "Withdrawal Checklist" at a bare minimum. The Justice Center also failed to implement an adequate oversight system to ensure that inmates with known medical needs received the required and prescribed treatments. Jail staff and supervisory staff failed to properly monitor Mr. Starks and supervisory staff failed to supervise lower level employees including nurses, practical nurses and medical assistants who were treating and then failed to treat Mr. Starks. For example, there are also no records of Mr. Starks' pulse in Encounter No. 2 and No. 3, even though taking Mr. Starks pulse is part of the standing order in Encounter No. 1. All these various failures should have been discovered and remedied with proper supervision and oversight. After a full review of the jail records it is my opinion that jail and medical personnel treated Mr. Starks with deliberate indifference and their actions were outrageous. All opinions given by me are to a reasonable degree of medical certainty based on my education, training and over 40 years of experience.

Sincerely,

Ross A. Heller, MD, MBA, FACEP
Associate Professor/Saint Louis University School of Medicine
Department of Surgery/Division of Emergency Medicine